FILED
COURT OF APPEALS
DIVISION II

2013 JUN 19 AM 8: 33

STATE OF WASHINGTON

BY

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ELIU E. SANTOS, | No. 42357-0-II |
| Appellant, | |
| | UNPUBLISHED OPINION |
| v. | |
| UNITED PARCEL SERVICES INC., | |
| Respondent. | |

BJORGEN, J. — Eliu Santos appeals from a superior court judgment and jury verdict confirming the order of the Board of Industrial Insurance Appeals (Board) denying his application to reopen his worker's compensation claim relating to a 2003 injury. He argues: (1) the Board lacked subject matter jurisdiction to enter a 2005 agreed order between the parties closing his claim; (2) the trial court abused its discretion in admitting testimony on medical causation by an unqualified, untimely-disclosed expert; and (3) the trial court abused its discretion in giving an attending physician jury instruction and an instruction defining "industrial injury." We affirm the trial court's judgment and jury verdict, and we deny Santos's request for attorney fees on appeal.

## FACTS

On November 17, 2003, Santos suffered a herniated disc in his lower back while working for United Parcel Services Inc. (UPS), a self-insured employer. Santos claimed time loss compensation as a result of the injury, and on April 8, 2005, the Department of Labor and Industries (Department) ordered time loss compensation for a period beginning January 8. UPS appealed the April order to the Board.

On November 22, 2005, the Department, Santos, and UPS appeared before a board industrial appeals judge (IAJ). All were represented by counsel. The parties agreed to settle Santos's claim and requested the IAJ to enter an "Order on Agreement of Parties" reflecting the settlement. The order remanded to the Department to close Santos's claim, terminate his time loss compensation benefits, and grant him a category 3 permanent partial disability award for his herniated disc. On December 8, 2005, the Department entered a ministerial order closing Santos's claim with a permanent partial disability award according to the IAJ's order. Santos did not appeal from either the agreed order or the Department's ministerial order closing his claim.

After his injury, Santos had surgery to repair his herniated disc, but was unable to return to his position at UPS. He began working elsewhere as a truck driver, which required him to attach his truck to cargo trailers. As part of this process, Santos had to raise and lower the trailer's "landing gear," two legs attached to the trailer that adjusted the trailer's height to match that of his truck. Certified Appeals Board Record (CABR) (July 10, 2008) at 13. Santos raised or lowered the landing gear through a crank mechanism.

On February 2, 2007, Santos had to operate the crank to lower a trailer, but the crank was stuck. Santos pulled on it; and when it gave way, he immediately felt pain in his lower back and right leg. Santos was subsequently diagnosed with a herniation of the same disc he had previously injured while working for UPS.

Santos then applied to the Department to reopen his claim based on the 2003 injury at UPS. The Department denied the request to reopen, finding that his 2003 injury did not worsen or become aggravated since closure of his claim. On appeal to the Board, Santos moved to remand to the Department, arguing the Board had no subject matter jurisdiction to enter the

2

November 22, 2005 agreed order between the parties that closed his claim from the 2003 injury. Thus, according to Santos, the 2005 agreed order was void, his claim was never properly closed, and the Board accordingly had no jurisdiction to hear his current claim as an aggravation claim. If the 2005 order were void, there would be no need to reopen the 2003-2005 proceeding on the basis of subsequent aggravation of that injury.

A Board IAJ issued an order that the Board had jurisdiction over the appeal and denying Santos's motion. Santos then filed an interlocutory appeal with the Board, which ruled that it had exceeded its authority in entering the November 22, 2005 order, but concluded that the error went to scope of review, not jurisdiction.

At this point, the matter returned to an IAJ for a hearing on the merits of Santos's appeal. The IAJ issued a proposed decision and order, concluding that the Board had jurisdiction and that Santos's 2007 injury was not an aggravation of his 2003 injury suffered while working for UPS. The full Board denied Santos's petition for review, adopting the IAJ's proposed decision and order as its final order.

Santos appealed to superior court, where a jury returned a verdict in UPS's favor, confirming that the Board's decision was correct. Santos appeals.

## ANALYSIS

### I. NATURE AND STANDARD OF REVIEW

Judicial review of the decisions of this Board follows its own drummer. Unlike the record review familiar in most administrative appeals, the superior court hears appeals from the Board de novo. RCW 51.52.115. Accordingly, a party attacking the Board's decision must support its challenge by a preponderance of the evidence. *Ruse v. Dep't of Labor & Indus.*, 138

Wn.2d 1, 5, 977 P.2d 570 (1999). Unlike typical de novo proceedings, though, the superior court may not consider evidence beyond that included in the record filed by the Board, with limited exceptions. RCW 51.52.115. When, as here, a jury trial is demanded, the testimony from the IAJ proceeding is read aloud to the jury. If the jury determines "that the board has acted within its power and has correctly construed the law and found the facts, the decision of the board shall be confirmed; otherwise, it shall be reversed or modified." RCW 51.52.115.

On appeal to this court, "review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings." *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009) (citing *Ruse*, 138 Wn.2d at 5).

As discussed below, this appeal raises legal and evidentiary challenges. It does not challenge whether any findings of fact presented for review are supported by substantial evidence. Thus, we need not decide precisely what findings are before us on appeal or whether those findings are adequate for review. *Cf. Groff v. Dep't of Labor & Indus.*, 65 Wn.2d 35, 40, 47, 395 P.2d 633 (1964). The standards we apply in reviewing this appeal's specific legal and evidentiary challenges are set out below.

## II. SUBJECT MATTER JURISDICTION

Santos argues that the 2005 Board decision closing his claim and awarding him disability benefits was outside the Board's jurisdiction, because neither closure of the claim nor a disability award was an issue then before the Board on appeal. Thus, he argues, the 2005 agreed order was void when entered, the 2003-2005 proceeding was never closed, and the Board erred in concluding that it had subject matter jurisdiction to hear his present appeal seeking to reopen his

4

2003 claim. The Department argues that the Board's error was one of exceeding its scope of review, a type of error that did not deprive it of subject matter jurisdiction to enter the 2005 agreed order. Thus, the Department argues, the 2005 order was not void and became final and binding on the parties when Santos did not appeal it. We agree.

Santos does not appear to have challenged the Board's subject matter jurisdiction in his de novo appeal to the superior court. RAP 2.5(a), "Errors Raised for First Time on Review," provides in pertinent part:

> The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: (1) lack of *trial court* jurisdiction. . . . A party or the court may raise at any time the question of *appellate court* jurisdiction.

(Emphasis added.) This rule addresses only the lack of "court" jurisdiction; it makes no provision allowing a party to raise for the first time on appeal the lack of an *agency's* subject matter jurisdiction.

Santos has made two procedural mistakes here that preclude our consideration of his challenge to the Board's subject matter jurisdiction: First, he failed to appeal the Board's 2005 decision closing his 2003 claim, which order became final and binding. Second, even assuming, without deciding, that he could have challenged the Board's subject matter jurisdiction in his trial de novo appeal to the superior court, he failed to do so. We hold, therefore, that he cannot challenge the Board's subject matter jurisdiction for the first time in the instant appeal.

If Santos were able to raise that challenge, however, it would fail. In *Singletary v. Manor Healthcare Corp.*, 166 Wn. App. 774, 782, 271 P.3d 356, *review denied*, 175 Wn.2d 1008 (2012), the court held that

[t]he type of controversy over which an agency or tribunal has subject matter jurisdiction refers to the general category of controversies it has authority to decide and is distinct from the facts of any specific case.

More specifically, "'neither the Department nor a tribunal lack subject matter jurisdiction solely because it may lack authority to enter a given order.'" *Singletary*, 166 Wn. App. at 782-83 (quoting *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994)). The power to decide a type of controversy "includes the power to decide wrong, and an erroneous decision is as binding as one that is correct." *Singletary*, 166 Wn. App. at 783 (quoting *Marley*, 125 Wn.2d at 543) (internal quotation marks omitted).

In assessing subject matter jurisdiction, "our inquiry focuses on the 'type of controversy' because if it is within the tribunal's given subject matter jurisdiction, all other errors 'go to something other than subject matter jurisdiction.'" *Singletary*, 166 Wn. App. at 783 (quoting *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 316, 76 P.3d 1183 (2003)). "The Department enjoys broad subject matter jurisdiction to adjudicate all claims for workers' compensation benefits," and the "Board has broad subject matter jurisdiction to review department actions." *Singletary*, 166 Wn. App. at 783. "A determination to close a claim . . . falls squarely within the Department's authority to decide claims for workers' compensation and the [Board's] authority to review Department actions." *Shafer v. Dep't of Labor & Indus.*, 140 Wn. App. 1, 7, 159 P.3d 473 (2007) (footnote omitted).

Here, Santos's time loss compensation claim, its closure, and his partial permanent disability award were all matters falling within the Board's subject matter jurisdiction over workers' compensation benefit claims. Because the Board had subject matter jurisdiction to

enter the 2005 orders closing his claim with a disability award, those orders were not void and became final and binding when Santos did not appeal them.

### III. MOTION TO EXCLUDE EVIDENCE

In his appeal to superior court, Santos moved to exclude the testimony of Dr. Theodore Becker and an ergonomic report on which Becker relied, each of which the IAJ had admitted at the hearing on the merits in 2008. Santos argued that this evidence should be excluded because (1) Becker was not a medical doctor and could not testify about medical causation, (2) Becker's testimony was irrelevant because he never examined Santos or the landing gear mechanism he used, and (3) UPS failed to timely disclose the substance of his testimony. The superior court struck a portion of Becker's testimony that discussed force specifically in terms of causing Santos's injury, but otherwise denied the motion.

On appeal to us, Santos contends that the trial court abused its discretion in admitting Becker's testimony because (1) he was not a medical doctor and improperly testified about medical causation, (2) UPS failed to demonstrate that the ergonomic report was generally accepted within the relevant scientific community, and (3) UPS untimely disclosed the report. This argument fails.

The examination of these issues requires a return to the chronology. On February 11, 2008, Santos served interrogatories on UPS requesting disclosure of witnesses, the subject matter and substance of their expected testimony, and all materials or data on which the witnesses would rely. On April 29, UPS responded by objecting that witness confirmation was not yet due and stating that it would supplement its answer to the interrogatories.

On May 30, UPS confirmed Becker as a witness in anticipation of Christine Casady, a physical therapist, testifying for Santos. On July 7, three days before beginning his case-in-chief, Santos provided notice that he was not calling Casady as a witness. During his case-in-chief, Santos called Dr. Richard Johnson, an orthopedic surgeon, who had diagnosed him with a recurrent herniated disc. Johnson opined that without Santos's 2003 injury, his jerking and pulling of the stuck landing gear crank would not have injured his back, because the activity "was not of sufficient force to cause a . . . disc herniation." CABR (July 10, 2008) at 99. He concluded that Santos's injury while operating the crank was an aggravation of his 2003 injury sustained while working for UPS.

After Santos concluded his case-in-chief, UPS, in order to determine whether it would still call Becker in light of Casady not testifying, consulted with Becker about what relevant testimony he might provide. Becker informed UPS that he was aware of articles and reports on biomechanical forces involved in raising and lowering landing gears and could testify about such forces. On July 24, UPS received the articles and reports from Becker and provided them to Santos that same day.

Six days later, on July 31, Becker testified by deposition. Becker was a certified disability analyst and held a Ph.D. in human performance, which involved "studies of biomechanics, anatomical and neurological sciences, growth and motor development and . . . work and exercise physiology." CABR (July 31, 2008) at 7. Although Becker never examined Santos, he had previously assessed the physiological impact of raising and lowering trailer landing gears. Becker testified that with his biomechanics background, he had sufficient expertise to reach a conclusion about the force involved in Santos's activities while operating the

8

crank. Becker disagreed with Johnson's opinion and opined that jerking on the crank involved sufficient force to cause a herniated disc even without a previous injury.

One of the articles and reports supplied by Becker, which had been disclosed to Santos on July 24, was an ergonomic study on raising and lowering trailer landing gear. Becker testified that the study[1] was a reliable authority relied on by others in his field. Becker stated that the descriptions of the landing gear Santos operated were consistent with those described in the study, and that both were consistent with landing gear Becker had observed during the course of his work. The study concluded that operating landing gear could cause back injuries. Santos did not request a continuance to respond to Becker's testimony or the ergonometric report.

Turning now to Santos's first argument, that Becker was not a medical doctor and improperly testified about medical causation, we begin with the standard of review: we review the trial court's admission or exclusion of expert testimony for abuse of discretion. *Philippides v. Bernard*, 151 Wn.2d 376, 393, 88 P.3d 939 (2004). In general, "[a]n expert's opinion is admissible if the witness is properly qualified, relies on generally accepted theories, and the expert's testimony is helpful to the trier of fact." *Phillipides*, 151 Wn.2d at 393. In response to Santos's motion, the trial court struck the one portion of Becker's testimony that appeared to reach an opinion on medical causation of Santos's injury. The remainder of his testimony concerned the general biomechanics and force involved in operating a landing gear crank and his opinion that, in general, such force was sufficient to cause a herniated disc even without some

---

[1] The record does not reflect that the study was offered or admitted into evidence.

previous injury. These were not opinions on medical causation; they were opinions within Becker's biomechanical expertise. *See Ma'ele v. Arrington*, 111 Wn. App. 557, 564, 45 P.3d 557 (2002) (biomechnical engineer's testimony about insufficient force in an accident was not medical testimony outside his expertise). The trial court's ruling admitting Becker's testimony involved no abuse of discretion.

Santos's second argument is that UPS failed to demonstrate that the ergonomic report was generally accepted within the relevant scientific community under ER 702. Santos, however, did not raise this challenge before the trial court; instead, he objected to the report only on grounds that UPS failed to lay a sufficient foundation to "the hearsay rule." Report of Proceedings (RP) at 6-7. The alleged lack of scientific acceptance of the ergonomic report does not create manifest constitutional error permitting the issue to be raised for the first time on appeal under RAP 2.5(a)(3). Therefore, we do not further address this claim.

Santos's third argument, that UPS untimely disclosed the ergonomic report, raises closer questions. We review the trial court's decision to deny or grant discovery violation sanctions for abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). This includes decisions to admit or exclude evidence. *Viereck v. Fibreboard Corp.*, 81 Wn. App. 579, 587, 915 P.2d 581 (1996). The exclusion or limitation of a witness's testimony may be an appropriate sanction for the late disclosure of the witness or for other discovery violations. *See, e.g., In re Marriage of Gillespie*, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997); *Miller v. Peterson*, 42 Wn. App. 822, 825-26, 714 P.2d 695 (1986).

In determining whether trial courts have abused their discretion in allowing or excluding the testimony of an undisclosed witness, Washington appellate courts have focused primarily on

two factors: (1) whether there was a willful violation of a court discovery order and (2) whether the other party would be prejudiced by the testimony or by a continuance to allow for preparation and rebuttal. *See, e.g., Dempere v. Nelson*, 76 Wn. App. 403, 406, 886 P.2d 219 (1994) (willful violation was adequate grounds for exclusion of evidence); *see also Hampson v. Ramer*, 47 Wn. App. 806, 815, 737 P.2d 298 (1987) (exclusion of evidence proper where noncompliance caused irremediable prejudice to opponent). It is an abuse of discretion to exclude testimony as a sanction for a discovery violation "absent any showing of intentional nondisclosure, willful violation of a court order, or other unconscionable conduct." *Smith v. Sturm, Ruger & Co., Inc.*, 39 Wn. App. 740, 750, 695 P.2d 600 (1985).

As recounted above, Santos served interrogatories on UPS requesting disclosure of witnesses, the subject matter of their testimony, and all materials on which they would rely, as early as February 11, 2008. UPS responded only on April 29, 2008, refusing to disclose at that time because witness confirmation was not yet due. On May 30, UPS confirmed Becker as a witness, but only disclosed the ergonomic report on which Becker relied on July 24, one week before he testified. However, UPS listed Becker as a witness on May 30 only in reliance on Casady testifying for Santos. After Santos withdrew Casady as a witness, UPS offered the ergonomic report only after Santos had called Johnson to testify. UPS had previously supplied the ergonomic report to Santos on July 24, the same day it had received it from Becker. Although UPS's actions do not present a model of how discovery should work, the evidence falls well short of showing it willfully delayed disclosure of the ergonomic report beyond any applicable deadline.

11

On the question of prejudice, Santos never asked the IAJ for a continuance after being notified of the ergonomic report and never sought to depose Becker. Furthermore, Santos extensively cross-examined Becker concerning the dissimilarities between the frequency with which the study's subjects operated trailer landing gears and Santos's own particular circumstances. Accordingly, the record does not demonstrate that the timing of the report's disclosure prejudiced Santos. Under the standards above, the trial court did not abuse its discretion in denying Santos's motion to exclude the ergonomic report.

### III. JURY INSTRUCTIONS

Santos argues that the trial court erred in giving jury instructions 8 and 11.[2] This argument also fails.

We review a trial court's decision to give a jury instruction "de novo if based upon a matter of law, or for abuse of discretion if based upon a matter of fact." *Kappelman v. Lutz*, 167 Wn.2d 1, 6, 217 P.3d 286 (2009). "Jury instructions are sufficient when they allow counsel to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied." *Thompson v. King Feed & Nutrition Serv., Inc.*, 153 Wn.2d 447, 453, 105 P.3d 378 (2005).

A.     Instruction 8

Instruction 8 provided:

An "industrial injury" means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and

---

[2] Santos argues that the attending physician instruction was improper, but refers to it as instruction 12; the correct number is 11.

such physical conditions as result therefrom.

Clerk's Papers (CP) at 224.

Santos argues that this instruction "created a heightened potential for juror confusion, because much of the testimony allowed the jury to speculate about whether the 2007 incident was a new injury versus an aggravation." Br. of Appellant at 31. This raises a factual issue, and we review the trial court's decision for abuse of discretion.

The central issue before the jury was whether Santos's 2007 injury was a new industrial injury or an aggravation of his 2003 injury. It was not improper for the jury to deliberate on that issue, and the definition of "industrial injury" in instruction 8 did not confuse that deliberation. The trial court did not abuse its discretion in giving instruction 8.

B.      Instruction 11

Instruction 11 provided in part:

> You should give special consideration to testimony given by an attending physician. Such special consideration does not require you to give greater weight or credibility to, or to believe or disbelieve, such testimony. It does require that you give any such testimony careful thought in your deliberations.

CP at 227.

Santos argues that this instruction should not have been given, because it is not clear whether Dr. Robert Sarno, who testified for UPS that he had treated Santos in an emergency room shortly after Santos injured his back while operating the crank, or Dr. Johnson had the status of Santos's attending physician. In denying Santos's objection to instruction 11, the trial court stated, "I don't think it's confusing. I think that . . . obviously the fact that Dr. Sarno is the one who saw him relatively close in time to the incident . . . anyone would assume he's the

attending physician." RP at 50. Here, too, the trial court's decision was based on a factual matter, and we review it for abuse of discretion.

When an attending physician testifies in a worker's compensation case, an instruction stating that the jury should give the physician's testimony special consideration is generally required. *Hamilton v. Dep't of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988). This is so, "because an attending physician is not an expert hired to give a particular opinion consistent with one party's view of the case." *Intalco Aluminum v. Dep't of Labor & Indus.*, 66 Wn. App. 644, 654, 833 P.2d 390 (1992). Furthermore, a physician who has attended a patient for a considerable period of time is better qualified to give an opinion as to the patient's disability than a doctor who has seen and evaluated the patient only once. *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996).

In support of his argument, Santos cites *Boeing Co. v. Harker-Lott*, 93 Wn. App. 181, 186-88, 968 P.2d 14 (1998). *Harker-Lott*, though, held that the trial court did not abuse its discretion in declining to give an attending physician instruction. *Harker-Lott* is inapposite where, as here, the question is whether the trial court properly exercised its discretion in *giving* the instruction. Although both Sarno and Johnson examined Santos only once, Sarno evaluated and treated Santos in the role of an emergency room doctor, not as an expert hired by either party. Moreover, Sarno treated Santos around the time of his 2007 injury. It was not unreasonable for the trial court to conclude that Sarno's testimony supported giving the instruction and that the instruction would not mislead the jury. The trial court did not abuse its discretion in giving instruction 11.

14

IV. ATTORNEY FEES

Santos requests reasonable attorney fees and costs on appeal under RAP 18.1 and RCW 51.52.130. RAP 18.1 allows an award of attorney fees and costs on appeal if applicable law authorizes them. RCW 51.52.130 requires a self-insured employer, such as UPS, to pay a worker's attorney fees and certain costs if the Board's decision is "reversed or modified" and "additional relief is granted to the worker." We affirm the Board's decision and the verdict and judgment in superior court confirming that decision. Therefore, Santos is not entitled to attorney fees or costs under this authority.

We affirm and we also deny Santos's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
BJORGEN, J.

We concur:

_____
HUNT, J.

_____
JOHANSON, A.C.J.