[No. 1191-1.    Division One—Panel 1.    October 16, 1972.]

R. E. STRATTON, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Jackson, Ulvestad & Goodwin* and *Daniel G. Goodwin,* for appellant.

*Slade Gorton, Attorney General,* and *William T. Scharnikow, Assistant,* for respondent.

WILLIAMS, J.—This is an appeal by R. E. Stratton from a judgment entered upon the verdict of a jury confirming a decision of the Board of Industrial Insurance Appeals awarding him 100 percent of the maximum allowable for unspecified disabilities rather than a total permanent disability pension.

Stratton was injured on October 11, 1957. The Department of Labor and Industries awarded him 70 percent of the maximum allowable for unspecified disability and closed his claim. On appeal to the board, Stratton was granted a permanent partial disability award of 100 percent of the maximum allowable for unspecified disabilities. His appeal to the superior court from the order resulted in a jury verdict awarding him a total permanent disability pension. The judgment upon this verdict was reversed and a new trial granted because of immaterial and confusing matters in one of the instructions. *Stratton v. Department of Labor & Indus.,* 1 Wn. App. 77, 459 P.2d 651 (1969). In the second trial, from which this appeal lies, the jury upheld the board's order which granted Stratton a permanent partial disability award of 100 percent of the maximum allowable for unspecified disabilities rather than a total permanent disability pension.

The problem in this case arises from the application of RCW 51.52.115, which requires that if the case is submitted to a jury the court shall by instruction advise the jury of the exact findings of the board on each material issue.

Stratton's assignments of error are directed to the medical part of the board's findings so incorporated into the required instruction as follows:

3. On or about April 29, 1964, the claimant suffered from a psychiatric disorder which was causally related to his industrial injury and was diagnosed as anxiety neurosis with conversion symptoms. *Associated with this psychiatric disorder is a demonstrated lack of motivation in the claimant to seek out and maintain gainful employment, coupled with a strong tendency and desire to realize a monetary gain from his injury.*

(Italics ours.) It is Stratton's contention that the italicized sentence is not a medical finding based upon the evidence, but rather an argumentative assertion that he was not motivated to find work and desired to realize a monetary gain from his injury. We agree.

The board found, and the jury was so advised, that Stratton was permanently partially disabled from a physiological standpoint, which disability was equal to 60 percent of the maximum allowable for unspecified disabilities. Also, the board found, and the jury was so advised, that Stratton's injury had caused a psychiatric disorder which increased his total permanent partial disability to 100 percent of the maximum allowable for unspecified disabilities. The issue presented to the jury, therefore, was whether or not Stratton's condition, both physiological and psychiatric, rendered him totally and permanently disabled. Subsection 3 above quoted was an attempt by the board to state its findings as to the psychiatric aspect of Stratton's problems.

The first sentence was proper. However, the second sentence, which is italicized, is not based upon any medical or other evidence in the record and is an opinion of the board that Stratton won't look for work and has a strong desire to make money from his injury. This description of Stratton's attitude, unsupported as it is by the evidence, is a comment upon his character and an argument as to why he should not be awarded his pension. It is highly prejudicial and improper.

There was medical evidence in the record that Stratton had a well-defined neurosis of a kind which would prevent him from being motivated to seek or hold employment, and that unconsciously he did not wish to give up the monetary gains to be derived from his illness. Following are examples of this:

Q. And doctor, would you tell us why you feel that he would not be—that, is, he would be totally and permanently disabled the rest of his life? A. Well, because one, because the neurotic reaction I felt was fixed and that the motivation for doing very much about it was limited and, then, well, there are other things, the gain from the illness unconsciously was too much important for him to give up and I didn't think he would ever improve from this standpoint, at least not very probably.

. . .

Q. Well, a person with this psychiatric condition that you have diagnosed, doctor, does this condition render him unable or incapable of deciding whether to work or not? Can he decide? Does he have free will? A. That's a difficult question. I'm not sure that I can answer that. He can try, but then things, I suspect, from the history again, and I suspect this is true, begin to interfere. For example, he could try to work in the yard and get so sick that he has to go lie down after fifteen minutes. This kind of reaction would not be due to a physical thing, but an emotional thing.

. . .

Q. For example, in January of 1963, did you note that he usually has a number of excuses and rationalizations as to why he couldn't work? A. This was my evaluation of his explanation as to why he never seemed to be able to get a job or work. Q. It was your opinion that he didn't make a whole-hearted attempt to? A. Well, I felt that there was unconscious motivation involved in his not obtaining, getting, or maintaining a job.

Certainly, a finding based upon what the medical experts did say, that Stratton's psychiatric condition caused him unconsciously to reject work so that he could gain from his illness, would have been proper. No such finding was made. Rather, the board found that the medical condition of Stratton was that he had a psychiatric disorder *and* that he

had a lack of motivation to work and a desire to gain from the injury.

█ The department contends that the instruction with which we are concerned may not be considered now because no objection was made to it on the first appeal, and it therefore became the law of the case. *Zorich v. Billingsley,* 55 Wn.2d 865, 350 P.2d 1010 (1960); *Nopson v. Seattle,* 33 Wn.2d 772, 207 P.2d 674 (1949). It is true that no objection was made to the instruction until the second trial. RCW 51.52.115 prescribes an unusual appeal procedure in that although it specifies that the hearing in superior court shall be de novo, it also requires that if the case is submitted to a jury "the court shall by instruction advise the jury of the exact findings of the board on each material issue before the court." It was not until the decision in *Gaines v. Department of Labor & Indus.,* 1 Wn. App. 547, 463 P.2d 269 (1969), was handed down subsequent to the first appeal in this case that any definitive exposition was given which would assist counsel in evaluating and determining the character of the "exact findings of the board on each material issue before the court."

The "law of the case" rule is not to be applied inflexibly. *Greene v. Rothschild,* 68 Wn.2d 1, 402 P.2 356 (1965); *Seattle v. Northern Pac. Ry.,* 63 Wash. 129, 114 P. 1038 (1911); *Highlands Plaza, Inc. v. Viking Inv. Corp.,* 2 Wn. App. 192, 467 P.2d 378 (1970). To hold Stratton to the instruction as given in the first trial under these circumstances would be unjust.

The judgment is reversed and the cause remanded for a new trial. Costs will abide the final adjudication of the cause.

HOROWITZ, C.J., and CALLOW, J., concur.