[No. 40869-1-I. Division One. August 24, 1998.]
THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER EDWARDS, *Appellant*.

---

*David B. Koch* of *Nielsen, Broman & Associates, P.L.L.C.,* for appellant.

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

APPELWICK, J. — Appellant challenges the trial court's refusal to give a jury instruction requiring the jury to apply the first degree murder definition of "extreme indifference to human life" in cases of homicide by abuse. We hold that, as used in the homicide by abuse statute, "extreme indifference to human life" refers to an indifference to the life of the particular victim and not an indifference to human life in general. The trial court was correct in declining to

give the jury the appellant's proposed jury instruction. We affirm.

## Facts

Christopher Edwards and Heather Lequieu were the parents of two-year-old Amber Lequieu. Approximately six weeks prior to Amber's death, Edwards became sick and was unable to work, so he stayed home with Amber while Lequieu worked. Lequieu soon began to notice that Edwards was becoming easily frustrated with Amber, and that Amber seemed afraid to be around him. About two weeks prior to her death, there was an episode during which Amber was unusually groggy for a day and a half. Edwards at first denied anything had happened, but finally admitted to Lequieu that he had given Amber some of Lequieu's prescription medication. The same day, Lequieu found clumps of Amber's hair on the floor in Amber's room and bald spots on Amber's scalp. Again, after initially denying any involvement, Edwards admitted that he had picked up Amber by the hair. About a week and a half before Amber's death, Lequieu noticed deep bruising on Amber's stomach and bottom, which Edwards admitted to having inflicted on Amber for being bad. Edwards also admitted that sometimes when he was smoking marijuana he would blow the smoke in Amber's face.

On June 4, 1996, Edwards picked Lequieu up from work. Amber was in her car seat, limp and breathing shallowly. Edwards told Lequieu that Amber had fallen off the couch and hit her head. They took Amber to Stevens Hospital. Amber was transferred to Harborview Medical Center for further treatment.

The medical staff who treated Amber observed bruises on her chin, chest, neck, back, ankles and the insides of her legs. The bruises were in various stages, evidence that they had been inflicted over a number of days. Amber had a number of blunt impacts to her head, a subdural hematoma, and a fractured skull. She died two days later, without

regaining consciousness. Edwards eventually told police that Amber had been sitting on the floor but would not lie down as he had instructed her, so he grabbed her and shoved her to the floor, where she hit her head. Medical experts testified that significantly more force would be required to inflict Amber's fatal injuries and that the injuries were consistent with ongoing child abuse.

Edwards was arrested and charged with second degree murder and homicide by abuse. At trial, Edwards submitted a proposed jury instruction defining "extreme indifference to human life," an element of homicide by abuse.[1] The court denied the instruction and Edwards took exception. The court provided no instruction defining the phrase "extreme indifference to human life."[2] Edwards was convicted of second degree murder and homicide by abuse. Edwards had no criminal history. The trial judge sentenced him within the standard range: 11 years, eight months for

---

[1]Edwards' proposed jury instruction reads:

The phrase "under circumstances extreme indifference [sic]" as used in these instructions means actions which demonstrate a total disregard for human life and an actor characterized by a depraved mind. State v. Anderson, 94 Wn.2d 176, at 186-187, 616 P.2d 612 (1980); State v. Berge, 25 Wn. App. 433, at 436-437, 607 P.2d 1247 (1980).

[2]Jury Instruction No. 17 reads:

A person commits the crime of homicide by abuse if, under circumstances manifesting an extreme indifference to human life, the person causes the death of a child, and the person has previously engaged in a pattern or practice of assault of the child.

Jury Instruction No. 19 reads:

To convict the defendant of the crime of homicide by abuse, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 4th day of June, 1996, the defendant assaulted Amber Lequieu;

(2) That the defendant acted under circumstances manifesting an extreme indifference to human life;

(3) That the defendant's acts caused the death of Amber Lequieu;

(4) That Amber Lequieu was a child under sixteen years of age;

(5) That the defendant previously engaged in a pattern or practice of assault of Amber Lequieu; and

(6) That the acts occurred in the State of Washington.

second degree murder; 26 years, eight months for homicide by abuse, sentences to run concurrently.

## Decision

As a threshold matter, we note that Edwards does not challenge his conviction for second degree murder. Nor does he challenge the jury's finding that he engaged in a pattern or practice of previous assaults on Amber. Edwards' only challenge is to the court's ruling that he was not entitled to a jury instruction defining the term "extreme indifference to human life."

Edwards was charged with homicide by abuse. To commit homicide by abuse, a defendant must manifest an extreme indifference to human life.[3] First degree murder can also be committed by demonstrating an extreme indifference to human life.[4] Edwards argues that the court erred by refusing to give his proposed jury instruction requiring the jury to apply the first degree murder definition of

---

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

[3] RCW 9A.32.055(1) provides:

**Homicide by abuse**

(1) A person is guilty of homicide by abuse if, under circumstances manifesting an extreme indifference to human life, the person causes the death of a child or person under sixteen years of age, a developmentally disabled person, or a dependent adult, and the person has previously engaged in a pattern or practice of assault or torture of said child, person under sixteen years of age, developmentally disabled person, or dependent person.

[4] RCW 9A.32.030(1)(a) and (b) provides:

**Murder in the first degree**

(1) A person is guilty of murder in the first degree when:

. . . .

(b) Under circumstances manifesting an extreme indifference to human life, he or she engages in conduct which creates a grave risk of death to any person, and thereby causes the death of a person.

"extreme indifference to human life" in cases of homicide by abuse.

As applied within the first degree murder statute, "extreme indifference to human life" means a disregard of human life in general, not simply a disregard of the victim's life. *State v. Berge*, 25 Wn. App. 433, 607 P.2d 1247 (1980); *State v. Anderson*, 94 Wn.2d 176, 616 P.2d 612 (1980). In *Berge*, the defendant shot and killed his roommate while the roommate slept. Berge testified that he had voluntarily ingested cocaine and that, under the drug's influence, he thought his roommate was a KGB agent. Berge was charged with murder in the first degree under RCW 9.94A.030(1)(b). In reaching its decision, the court in *Berge* analyzed the entire statutory scheme of homicide.

> As we read the homicide statutes, the legislature intended that one who kills with the intent to cause the death of a particular individual be charged with murder in the first degree, pursuant to RCW 9A.32.030(1)(a), or murder in the second degree, as defined in the instruction given by the trial court. As other statutory provisions cover acts directed at a *particular* individual or individuals, we shall assume that the legislature intended RCW 9A.32.030(1)(b) to provide for those situations indicating a recklessness and extreme indifference to human life *generally*.

*State v. Berge* at 437 (emphasis in original).

Similarly, in *State v. Anderson*, the defendant was charged with first degree murder. Rejecting the prosecutor's argument that a recent amendment to the statute allowed conviction for first degree murder in cases where a defendant showed extreme indifference to only the life of the victim, the court held:

> The State's position would result in a disharmonious construction of RCW 9A.32 . . . . Second degree murder would be effectively eliminated. Every "intent to cause the death" (RCW 9A.32.030(1)(a), (b)) would be an "extreme indifference to human life" and conduct which "creates a grave risk of death", i.e., first degree murder.

*Anderson*, 94 Wn.2d at 190-91.

 Edwards argues that words defined in case law retain their meaning when used without definition in subsequently adopted statutes. That rule applied here, however, would leave the homicide by abuse statute without effect. When interpreting two or more statutes, the court must, whenever possible, interpret statutes so as to give meaning to both. *Miller v. King County*, 59 Wn.2d 601, 605, 369 P.2d 304 (1962). In interpreting a statute, the court looks to the plain meaning of the words used in the statute. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990). "A nontechnical statutory term may be given its dictionary meaning . . . . Furthermore, statutes should be construed to effect their purpose and unlikely, absurd or strained consequences should be avoided." *Id.* at 835, citing *State v. Stannard*, 109 Wn.2d 29, 742 P.2d 1244 (1987). And while the phrase "extreme indifference to human life" is defined in case law rather than in statute, the court's analysis in *Childers v. Childers*, 89 Wn.2d 592, 598, 575 P.2d 201 (1978), is instructive:

> Legislative definitions generally control in construing the statutes in which they appear, but when the same word or phrase is used elsewhere the meaning depends on common usage and the context in which it is used, unaffected by the other statutory definitions.

*Id.*

 The first degree murder and homicide by abuse statutes have differing structures and purposes. One of the elements of homicide by abuse is a pattern of abuse against a specific victim. It follows, therefore, that the mens rea of "extreme indifference" must be an indifference to the life of that victim in particular. By contrast, the first degree murder statute does not specify that the actionable conduct be committed against a particular victim, nor that there be a previous pattern of abuse against that victim in particular. The mens rea of "extreme indifference" in the first degree murder statute therefore applies in circumstances

different from those contemplated in the homicide by abuse statute.

While the Legislature may have had in mind the same standard of mens rea—"extreme indifference to human life"—for both the first degree murder and homicide by abuse statutes, the Legislature clearly intended that these crimes apply to different classes of victims. In 1987 the Legislature created the crime of homicide by abuse in response to the death of Eli Creekmore at the hands of his father. *State v. Creekmore*, 55 Wn. App. 852, 868, 783 P.2d 1068 (1989), citing Senate Journal, 50th Legislature (1987), at 156-58. The final bill report for Substitute Senate Bill 5089 (1987) reads, in part:

> It has been reported that it is very difficult to obtain a conviction for murder in child abuse cases because such a conviction requires a showing that the adult involved intended to kill the child . . . A new crime of homicide by abuse is created.

The Legislature clearly intended to create a statute which applies in circumstances not covered by then-existing statutes. The plain language and the context of the homicide by abuse statute requires that the "human life" referred to is the life of the victim, not human life in general.

 Edwards challenges the trial court's decision to deny him a particular jury instruction. The standard of review for jury instructions is whether the instructions are correct as a matter of law. *State v. Williams*, 96 Wn.2d 215, 634 P.2d 868 (1981). Jury instructions are constitutionally sufficient if the jury is instructed as to each element of the offense charged. *State v. Pawling*, 23 Wn. App. 226, 232, 597 P.2d 1367 (1979), citing *State v. Emmanuel*, 42 Wn.2d 799, 259 P.2d 845 (1953). The jury instructions in the case at bar laid out each element of the crime of homicide by abuse. The trial judge correctly declined to give the jury Edwards' proposed instruction further defining the element of "extreme indifference to human life."

 Criminal evidence is sufficient if, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The record contains ample evidence that Edwards engaged in a pattern or practice of assaulting his daughter and that his actions demonstrated an extreme indifference to her life. The evidence supports Edwards' conviction for homicide by abuse.

The order of the trial court is affirmed.

BAKER and COX, JJ., concur.