[No. 41473-9-I.   Division One.   November 30, 1998.]
THE BOEING COMPANY, Respondent, v. BARBARA HARKER-LOTT, Appellant.

---

[5]*W.R.P. Lake Union Ltd. v. Exterior Servs.*, 85 Wn. App. at 752.

[6]RCW 60.04.081(4); *W.R.P. Lake Union Ltd. v. Exterior Servs.*, 85 Wn. App. at 753.

*David L. Harpold* of *Harpold & Leininger,* for appellant. *Michael L. Hall* of *Perkins Coie,* for respondent.

APPELWICK, J. — The Boeing Company appealed a decision favorable to Barbara Harker-Lott entered by the Board of Industrial Insurance Appeals. A jury reversed the Board's decision after the superior court refused to instruct it that it should give special consideration to the attending physician's testimony. We do not agree with Harker-Lott that the court was required to give the instruction. Because refusing the instruction was not manifestly unreasonable, we affirm.

In July 1988, Harker-Lott was injured in a car accident in the course of her employment with Boeing. In November 1988, she sought treatment from Dr. George Gilman, who was an orthopedic surgeon. Later that month she was involved in another car accident unrelated to her work. Harker-Lott was hospitalized under Dr. Gilman's care from December 27, 1988, through January 5, 1989. After that, she never returned to work.

In July 1989, Harker-Lott filed an application for industrial insurance benefits. When she did not seem to be improving, Dr. Gilman began considering surgery. Harker-Lott sought a second opinion and treatment from a neurologist, Dr. Robert Aigner. Dr. Aigner referred Harker-Lott to a neurosurgeon, Dr. James Blue. Dr. Blue did not agree with Dr. Gilman's recommendation of surgery and found no objective evidence of a physical problem attributable to her July 1988 car accident.

184

Nevertheless, on October 5, 1990, Dr. Gilman performed surgery to remove a disk and fuse together two joints in Harker-Lott's neck in an attempt to alleviate her headaches and other pain. After the surgery, her headaches were less severe, but she continued to be in pain.

In May 1992, Harker-Lott was admitted to the Virginia Pain Management Program where she was treated by Dr. Thomas Williamson-Kirkland. Harker-Lott's condition improved when she was in the 10-day inpatient program, but after she returned home, she told Dr. Williamson-Kirkland she was worse. He believed she would do better if she returned to work because it would allow her to take her mind off the other stresses in her life.

In January 1993 and August 1994, Harker-Lott was involved in two other car accidents. Then, in April 1995, Harker-Lott sought treatment from neurologist Hang Kim. Kim used bioelectric treatments to ease the pain she described, but her pain returned when she tried to increase her level of activity, even though to Kim she appeared to be normal neurologically.

In June 1995, an order was entered awarding time-loss compensation as paid through November 15, 1993, and compensation for permanent partial disability. The Department of Labor and Industries affirmed that order in September 1995. Harker-Lott appealed, and the Board of Industrial Insurance Appeals reversed and remanded the order. The Board found that Harker-Lott had two herniated discs and lumbar strain as a result of the July 1988 injury, but her other conditions—cervical degenerative arthritis and somatoform pain disorder[1]—were not proximately caused by that accident. Nevertheless, the Board found that, "considering her age, training, experience, injury and response thereto, and other relevant factors—including but not limited to her somatoform pain disorder," she was unable to engage in any reasonably continu-

---

[1]According to psychiatrist Peter Londberg, a "somatoform pain disorder," means "the patient has pain complaints that are not explained on a[n] anatomical basis."

ous gainful employment. Thus, the Board concluded that from November 13, 1993, through September 21, 1995, Harker-Lott was temporarily totally disabled, she was permanently totally disabled as of September 21, 1995, and her disability was proximately caused by her July 1988 industrial injury.

Boeing petitioned for review of the Board's decision, but the petition was denied, so Boeing appealed to King County Superior Court. When the parties submitted their proposed jury instructions, Harker-Lott included one stating that the jury should give special consideration to testimony given by an attending physician. The court refused to give it.

The jury found that Harker-Lott was not temporarily totally disabled between November 15, 1993, and September 21, 1995, and was not permanently totally disabled as of September 21, 1995, as a result of her July 1988 industrial injury. Therefore, the court entered judgment in favor of Boeing. Harker-Lott moved for a new trial, but the motion was denied. This appeal followed.

## Refusing The Instruction Was Not An Abuse Of Discretion

Harker-Lott requested Washington Pattern Instruction 155.13.01, which states as follows:

> You should give special consideration to testimony given by an attending physician. Such special consideration does not require you to give greater weight or credibility to, or to believe or disbelieve such testimony. It does require that you give any such testimony careful thought in your deliberations.

Harker-Lott contends that the lower court's refusal to give the instruction deprived her of a fair trial. She argues that because she was required to be examined by so many doctors who ultimately testified on Boeing's behalf, the instruction was needed to "level the playing field." She further contends the instruction defines the substantive law when both treating physicians and independent examiners retained by the employer testify.

■ ■ Whether to give a particular jury instruction is a matter within the trial court's discretion.[2] A trial court's refusal to give a requested instruction, therefore, is reviewed only for abuse of discretion.[3] A trial court abuses its discretion if its decision was manifestly unreasonable, or its discretion was exercised on untenable grounds, or for untenable reasons.[4] An error on jury instructions requires reversal only if it is prejudicial.[5]

■ An error is prejudicial if it affects the outcome of the trial.[6]

Relying upon *Hamilton v. Department of Labor & Indus.*,[7] Harker-Lott contends that in workers' compensation cases special consideration should be given to the opinion of the claimant's attending physician. We agree. But the *Hamilton* court did not hold that an instruction to that effect was mandatory. Rather, the court held only that such an instruction was not a comment on the evidence.[8] No case has specifically held that such an instruction must be given when the evidence supports it. In fact, Harker-Lott concedes that the instruction is not mandatory in all cases.

■ In general, "[i]nstructions are sufficient if they permit a party to argue his or her theory of the case, are not misleading, and, when read as a whole, properly inform the jury on the applicable law."[9] But if the key issue in a case involves a theory that is not likely to be understood by a lay jury without a specific explanation by the judge, fail-

---

[2]*Stiley v. Block*, 130 Wn.2d 486, 498, 925 P.2d 194 (1996).

[3]*Stiley*, 130 Wn.2d at 498.

[4]*State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997).

[5]*Stiley*, 130 Wn.2d at 498-99; *Williams v. Virginia Mason Med. Ctr.*, 75 Wn. App. 582, 586, 880 P.2d 539 (1994).

[6]*Stiley*, 130 Wn.2d at 499.

[7]*Hamilton*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988).

[8]*Hamilton*, 111 Wn.2d at 571.

[9]*Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 662, 935 P.2d 555 (1997).

ing to give "a correctly worded and particularized instruction"[10] may be error.

Harker-Lott's proposed instruction was not necessary for the jury to understand her theory of the case. One of the court's general instructions told the jury it could "take into account the opportunity and ability of the witness to observe, any interest, bias or prejudice the witness may have, the reasonableness of the testimony of the witness considered in light of all the evidence, and any other factors that bear on believability and weight." That instruction allowed Harker-Lott's counsel to argue in closing that the testimonies of Dr. Gilman and Dr. Kim, which were favorable to Harker-Lott, should be given special consideration because their goal was to treat her:

> Dr. Gilman is treating her as a patient. He has a bit of a different problem than some of the other physicians that you have heard in this case. He has got to try to make his patient well.
>
> . . . .
>
> All the doctors except Gilman and Kim treated her like a machine. They saw her one time, which would only be necessary to fix a transmission. She got this and they got that, bam, that's it. But they don't have the obligation to treat her as a patient.

The concept of giving special consideration to an attending physician was not so esoteric that the jury needed a special instruction from the judge to understand it. Moreover, convincing the jury to give greater weight to her attending physicians was not key to Harker-Lott's case. Thus, in contrast to the situation in *Wendt v. Department of Labor & Indus.*,[11] the more specific instruction was not necessary.

Moreover, the attending physicians whose testimonies were read to the jury disagreed whether Harker-Lott was injured as a result of the on-the-job accident. Two of the

---

[10]*See Wendt v. Department of Labor & Indus.*, 18 Wn. App. 674, 679, 571 P.2d 229 (1977).

[11]*See Wendt*, 18 Wn. App. at 679.

doctors supported Harker-Lott's claim that she was disabled as a result of her industrial injury. A third believed her problem was habitual tension, as opposed to a physical injury. A fourth doctor, who also might be considered an attending physician,[12] found no objective evidence of a physical problem attributable to her July 1988 car accident, and said that because her pain presented "so profusely," it was not likely to have been caused by one event.[13]

Because the testimonies of the attending physicians were in conflict, and the proposed instruction did not involve an esoteric concept key to Harker-Lott's case, and the instructions as given allowed Harker-Lott to argue that the testimonies of Dr. Gilman and Dr. Kim should be given special consideration, refusing to instruct the jury to give the attending physicians' testimonies special consideration was not manifestly unreasonable. The trial court did not abuse its discretion when it refused to give the instruction.

Moreover, even if refusing the instruction had been error, given the evidence presented, and the complete language of the proposed instruction, it is unlikely Harker-Lott's proposed instruction would have changed the outcome of the case. Although the proposed instruction would have told the jury to give special consideration to the testimonies of attending physicians, it also would have advised the jury that it was not required to give greater weight or credibility to those testimonies, or to believe those testimonies. Rather, according to the instruction, giving special consideration to the attending physician's testimony meant only that the jury was to give it careful thought in its deliberations.[14]

---

[12]No Washington cases were found that specifically define who is an "attending" or "treating" physician. Case law reflects, however, that a physician's testimony should be given special consideration if he or she attended to the patient for a considerable period of time for the purpose of treatment. *See Young v. Department of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996).

[13]The fourth doctor was a neurosurgeon who saw Harker-Lott only once, but he evaluated her to help determine a course of treatment for her.

[14]Division Two has questioned what the point is of advising the jury to give

But the testimonies of both of Harker-Lott's own doctors gave the jury reasons to question whether Harker-Lott was disabled as a result of her July 1988 accident. Moreover, the physicians who testified for Boeing presented a strong case that something other than the industrial injury was the cause of Harker-Lott's pain. Thus, it is unlikely the outcome would have been different even if the jury had been instructed to give special consideration to the testimony of an attending physician.

The superior court's decision is affirmed.

BAKER and COX, JJ., concur.

Review denied at 137 Wn.2d 1034 (1999).

the attending physician's testimony "special consideration:"

We are unsure what the Supreme Court means by "special consideration". *Hamilton* explained that this does not require a jury to "give more weight or credibility to the attending physician's testimony but to give it careful thought." We assume that the jury gives careful thought to every witness's testimony. If the attending physician's testimony does not carry any more weight or credibility with the jury, how then does the jury give it special consideration?

*McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 394, 828 P.2d 1138 (1992).