# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

CLARK COUNTY,

     Respondent,

v.

PATRICK J. McMANUS,

     Appellant.

)
)
)
)
)
)
)
)
)
)

No. 72437-1-I

ORDER WITHDRAWING
OPINION

The court is withdrawing the opinion filed on May 18, 2015 in the above matter and replace it with a revised opinion.

It is hereby

ORDERED that the opinion filed on May 11, 2015 is withdrawn and replaced with a revised opinion to be filed on June 8, 2015.

SO ORDERED

Dated this _8th_ day of ___June___, 2015.

FOR THE COURT:

_____
Presiding Judge

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2015 JUN -8 AM 8:55

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CLARK COUNTY, | ) | No. 72437-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| PATRICK J. McMANUS, | ) | PUBLISHED OPINION |
| Appellant. | ) | FILED: June 8, 2015 |

2015 JUN -8 AM 8:55
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

SPEARMAN, C.J. — Patrick McManus appeals the trial court's judgment and order reversing an award of benefits under the Industrial Insurance Act, Title 51 RCW, by the Department of Labor and Industries (Department). He claims the trial court improperly admitted hearsay evidence through the testimony of his treating physician. He also contends that the jury was improperly instructed. We agree with McManus, reverse the judgment, and remand for a new trial.

## FACTS

Patrick McManus is a former Clark County (County) employee. Between 1999 and 2011, he worked fulltime for the County operating a street sweeper. He stopped working in April 2011 because of debilitating, degenerative spinal disease, which he attributes to his work as a street sweeper operator. Shortly

after leaving work, McManus filed a claim for workers' compensation under Title 51 RCW, the Industrial Insurance Act (Act).

In reviewing the claim, the Board of Industrial Insurance Appeals (Board) considered deposition testimony from several witnesses. McManus testified that he began experiencing pain that radiated across his low back and down his left leg in early 2010. He attributed this pain to the cramped confines and bumpy rides of the street sweepers he operated for the County. In particular, he claimed that while the first two street sweepers he operated had adjustable air ride seats and relatively ergonomic cab designs, the third and final machine he operated, to which he was assigned in either 2008 or 2009, had an uncomfortable cab layout and a negative air ride seat that, according to McManus, felt like a block of concrete whenever he hit a bump.

McManus also testified regarding a preexisting back condition and other possible causes for his pain. He testified that his weight had hovered around the 330 pound mark for the past 30 years and that he had used tobacco products regularly until 2011. He acknowledged sustaining a low back injury at age 19, which resulted in flare-ups of pain in his low back and legs. McManus also conceded having been on prescription medication for pain in his lower back, buttocks, and left leg since 2001, approximately 9 years before the onset of the symptoms he alleged were work related.

The sole medical expert to testify on behalf of McManus was Dr. Paul Won, who is board certified in preventive and family medicine. In his deposition, Dr. Won testified that he began treating McManus in January 2005 following a

2

low back injury unrelated to the condition alleged in his workers' compensation claim. After this initial treatment, McManus had continued to work his regular job as a street sweeper operator. According to Dr. Won, McManus had a gradual increase in low back pain during this time. On June 25, 2010, Dr. Won obtained a magnetic resonance imaging (MRI) scan of McManus' back. The scan showed various spinal changes as compared to a prior study, including a central disc protrusion at the L2-3 vertebra. Based on this scan, Dr. Won diagnosed McManus with displacement of a lumbar intervertebral disc at L2-3. Dr. Won next treated McManus on April 11, 2011, at which time McManus complained about low back pain due to a poor quality seat cushion in his street sweeper.

On direct examination, Dr. Won acknowledged a November 14, 2011 letter to McManus' claims representative, in which Dr. Won had opined that the cause of McManus' lower back condition was his work as a street sweeper operator. Dr. Won testified that his opinion had not changed since writing the November 14 letter. He opined that "driving trucks with jarring and bouncing has made a major material contribution to [McManus'] lumbar condition." CABR (Won) at 30-31.[1] According to Dr. Won, this opinion was based on his understanding of McManus' medical history and the physical forces McManus' spine endured during his street sweeping work.

On cross examination, Dr. Won testified over McManus' hearsay objection that he was aware a consulting neurosurgeon, Dr. Wrobel, had opined that it was

---

[1] "CABR" refers to the certified appeal board record. Deposition transcripts within the CABR are cited by parenthetical reference to the deponent's last name.

3

unknowable whether or not the disc protrusion at L2-3 was related to McManus' employment. Dr. Won also stated he was aware of Dr. Wrobel's opinion that "no one could relate the protrusion at 23 [sic] and the stenosis to the work activities with Clark County." CABR (Won) at 39. While Dr. Won conceded that a neurosurgeon would likely have greater expertise than he in determining the etiology of degenerative disc disease such as McManus', he ultimately did not agree with Dr. Wrobel's opinion and testified that his own initial opinion that McManus' low back condition arose from the conditions of his work as a street sweeper operator was still valid based on his knowledge of McManus' medical history.

The County offered the deposition testimony of two experts, Dr. Thomas Dietrich and Dr. James Harris. Dr. Wrobel did not testify. Dr. Dietrich, a board certified neurosurgeon, stated that he had rendered an opinion based on a July 14, 2011 examination of McManus. Dr. Dietrich concluded that McManus' low back condition did not arise naturally and proximately from the distinctive conditions of his employment; however, he acknowledged that the repetitive bouncing up and down McManus endured over a period of years as a street sweeper operator likely played a role in the rate of degenerative change in his condition.

Dr. Harris, a board certified orthopedic surgeon, testified that he conducted a review of McManus' records at the request of the County. Dr. Harris compared a December 14, 2005 CT (computed tomography) scan of McManus' lumbar spine with the June 25, 2010 MRI ordered by Dr. Won and concluded that

the 2010 imaging showed a new central disc protrusion at the L2-3 level. Dr. Harris' initial report indicated that McManus' employment could be a possible cause of the abnormalities visible in the imaging scans. However, Dr. Harris testified that his initial conclusion was speculative, rendered with insufficient information on his part. He testified that after additional research, his ultimate conclusion was that McManus' low back condition was not the result of an industrial injury. Dr. Harris attributed the injury to the normal aging process. He noted that by age 50, about half the population would experience similar degenerative changes. He also recognized the role of obesity and heredity in such degenerative changes. While acknowledging that the conditions of McManus' work may have contributed to symptoms of this underlying condition, Dr. Harris maintained that McManus' work did not cause the condition.

At the close of evidence, an industrial appeals judge determined that McManus' injury was work related, awarded him compensation under the Act, and issued a proposed decision and order, which included the following findings of fact:

1. On April 10, 2012, an industrial appeals judge certified that the parties agreed to include the Jurisdictional History, as amended, in the Board record solely for jurisdictional purposes.

2. Patrick J. McManus worked as a street sweeper operator for Clark County from 1998 or 1999 to April of 2011. As a street sweeper operator, Mr. McManus worked 40 hours per week, and sometimes worked overtime. While operating the street sweeper, Mr. McManus repetitively hit holes and dips along the curb line, which can be the roughest part of the road. Bumpy conditions jarred his back, causing pain. In 2008 or 2009, Clark County purchased a new street sweeper. Mr. McManus experienced more bumping and jarring while operating the new street sweeper. In April of 2011, Mr.

McManus ceased working as a street sweeper operator due to pain in his low back.

3. As early as 1976, prior to his employment with Clark County, Mr. McManus was seen and treated for intermittent, chronic low back pain and degenerative disc changes. An MRI dated February 24, 2006 showed moderately severe degenerative changes in the entire lumbar spine. An MRI dated June 25, 2010, showed moderately severe degenerative changes in the entire lumbar spine, and also a new central disc protrusion at the L2-3 level.

4. Repetitive jarring and bumping constitute distinctive conditions of employment.

5. Mr. McManus sustained an aggravation of his pre-existing cervical degenerative disc changes arising naturally and proximately out of the distinctive conditions of his employment with Clark County.

CABR at 70-71.

The County petitioned for review by the Board. On McManus' motion, the Board excluded Dr. Won's testimony regarding his knowledge of Dr. Wrobel's opinions. The Board affirmed the industrial appeals judge's decision and adopted its proposed decision and order.

The County petitioned for review in the Clark County Superior Court. At trial, the jury was instructed that the sole question before it was whether "the Board of Industrial Insurance Appeals [was] correct in deciding that Patrick McManus' low back condition, diagnosed as aggravation of degenerative disc changes and a new central disc protrusion at L2-3 level[,] arose naturally and proximately from the distinctive conditions of his employment with Clark County operating a street sweeper." Clerk's Papers (CP) at 98. The jury concluded that the Board was incorrect in concluding that McManus' back condition arose from

his employment operating the street sweeper. The trial court entered an order reversing the Board's decision. McManus appeals.

## DISCUSSION

### Evidentiary Rulings

Before trial, the County requested that the trial court reverse the Board's ruling excluding that part of Dr. Won's testimony relating to Dr. Wrobel's opinion. The County argued that this testimony was admissible under ER 703 because, although hearsay, Dr. Won relied on Dr. Wrobel's opinion in forming his own conclusions as to the cause of McManus' condition. The trial court agreed with the County, reversed the ruling of the Board, and overruled McManus' objection. McManus argues that the trial court's ruling was error. We agree.

A superior court on review of a Board's decision has discretion to review the Board's evidentiary rulings. We review for abuse of discretion. Gorre v. City of Tacoma, 180 Wn. App. 729, 769-70, 324 P.3d 716 (2014), review granted, 181 Wn.2d 1033 (2015). A trial court abuses its discretion if its decision is manifestly unreasonable or its discretion is exercised on untenable grounds or for untenable reasons. Boeing Co. v. Harker-Lott, 93 Wn. App. 181, 186, 968 P.2d 14 (1998).

Generally, the out of court statements of a nontestifying declarant are inadmissible to prove the truth of the matter asserted. ER 802. The County contends that Dr. Wrobel's statements are admissible for impeachment purposes under ER 613 or as a statement of a party-opponent under ER 801(d)(2). Both arguments lack merit. Dr. Wrobel's opinion was not a prior statement by Dr. Won and, thus, could not be used for impeachment of Dr. Won under ER 613. And

because Dr. Wrobel was not a party to the case, one authorized by a party to make a statement, or an agent or employee of a party, the ER 801(d)(2) exemption for admissions of party-opponents does not apply.

The County also contends that Dr. Wrobel's statements were admissible, even if hearsay, under the statement for medical diagnosis or treatment (ER 803(a)(4)) or learned treatise (ER 803(a)(18)) hearsay exceptions. Neither exception applies.

ER 803(a)(4) provides a hearsay exception for

[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Here, the trial court admitted the following line of questioning over McManus' hearsay objection:

Q. Are you aware that Dr. Wrobel himself testified in a discovery deposition in this case that it is unknowable as to whether or not the protrusion at L2-3 was, in fact, related to his employment?
....
Q. Are you aware of that, Doctor?
A. Yes.
Q. You are aware of that?
A. Yes.
....
Q. And his answer was that no one could relate the protrusion at 23 [sic] and the stenosis to the work activities with Clark County; correct?
A. Yes, that is correct.

CABR (Won) at 38-39. Because it is evident from counsel's first question that Dr. Wrobel's statements were made in a discovery deposition and not in the course of medical diagnosis or treatment, ER 803(a)(4) does not apply.

ER 803(a)(18) is likewise inapplicable. The rule establishes a hearsay exception for "statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice." Because Dr. Wrobel's statements plainly were not contained in a published work, they were not admissible pursuant to this exception.

Next, the County argues that, even if hearsay, Dr. Wrobel's statements were admissible under ER 703 as the basis for Dr. Won's expert opinion and, pursuant to ER 705, were subject to disclosure on cross examination. But the argument fails because the County misconstrues Dr. Won's testimony.

It is well established that under ER 703, an expert opinion based on the opinion of a nontestifying expert is admissible, so long as the testifying expert reasonably relied on the opinion. On cross-examination, the testifying expert may be compelled to reveal the underlying sources of his or her opinion, including otherwise inadmissible hearsay evidence. ER 705; see also Deep Water Brewing, LLC v. Fairway Res. Ltd., 152 Wn. App. 229, 275, 215 P.3d 990 (2009) ("[ER 703] permits experts to base their opinions on facts or data that might not otherwise be admissible into evidence...[and] the trial court may allow the admission of hearsay evidence and otherwise inadmissible facts for the limited purpose of showing the basis of the expert's opinion."); Bryan v. John Bean Div. of FMC Corp., 566 F.2d 541, 545 (5th Cir. 1978) (construing Fed. R. Evid. 703

and 705); 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 703.6 (5th ed. 2007). But neither rule applies in this case.

Dr. Won offered an expert opinion on the cause of McManus' low back condition, which he testified was based solely on his understanding of McManus' medical history and the physical realities of McManus' work as a street sweeper operator. On cross-examination, the County elicited testimony regarding Dr. Wrobel's conflicting opinion as to causation. But, there is no evidence that Dr. Won relied on Dr. Wrobel's statements in forming his own opinion as to causation as contemplated by ER 703 and 705. Thus, Dr. Won's hearsay statements were not subject to admission under either rule.

Because Dr. Wrobel's statements are hearsay not within any exception, the trial court's decision to admit the statements was an abuse of discretion.

Jury Instructions

McManus also contends that the jury instructions in this case were insufficient for several reasons. The standard of review for jury instructions is whether the instructions are correct as a matter of law. State v. Edwards, 92 Wn. App. 156, 164, 961 P.2d 969 (1998). Instructions are sufficient if they permit a party to argue his or her theory of the case, are not misleading, and, when read as a whole, properly inform the jury of the applicable law. Boeing, 93 Wn. App. at 186. We review the trial court's decision not to give a particular jury instruction for abuse of discretion. Id.

McManus first contends the trial court erred in refusing to give an introductory instruction to the jury, advising it that the Board's decision affirmed the industrial appeals judge's earlier, favorable decision. We disagree.

In superior court review of a Board decision, the function of a jury is to determine whether the Board is correct in rendering that decision. Stratton v. Dep't of Labor & Indus., 1 Wn. App. 77, 80, 459 P.2d 651 (1969). Prior to deliberations, the trial court is charged with instructing the jury of the exact findings of the board on each material issue before the court. RCW 51.52.115. In this case, the trial court's instruction 4 reproduced verbatim each of the Board's findings of fact on the nature and cause of McManus' injury.[2]

McManus contends that the prior history of the case, i.e., that the Board reached its decision in affirmance of the industrial appeals judge's decision, was also a "material issue" within the meaning of RCW 51.52.115. We rejected a similar argument in Stratton. In that case, we considered whether an administrative law judge's preliminary determination in a proposed decision and order, which was subsequently rejected by the Board, constituted a finding of the Board on a material issue. 1 Wn. App. at 77. We concluded that it did not. We expressly held that the preliminary determination by the administrative law judge was immaterial to the only question to be decided by the trier of fact: whether the Board's ultimate determination was correct. Id. at 80. We also recognized the improper tactical advantage to be gained by a party advising the trier of fact of

---

[2] The only other finding of fact entered by the Board acknowledges the Board's jurisdictional basis, not a material issue before the trial court.

prior favorable determinations made by individuals or entities other than the Board in rendering its ultimate findings. We noted that "[t]he practice only serves to confuse the jury and divert its attention from the duty to determine whether, on material issues presented to them, the evidence preponderates in favor of or against the Board's findings and decision." Id. at 81 (emphasis omitted).

Notwithstanding our holding in Stratton, McManus appears to argue, without citation to authority, that jurors must have an understanding of the exact procedural history that brought the case before them. See Br. of Appellant at 15-16. But neither the industrial appeals judge's decision nor the fact that the Board affirmed that decision was material to the only issue to be determined by the jury in this case. Accordingly, the trial court had no statutory obligation to instruct the jury on the procedural history of the case and its refusal to give McManus' proposed introductory instruction was not error.

Next, McManus assigns error to the trial court's refusal to give his proposed jury instruction 10, which reproduced 6A WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 155.13.01 (6TH ED. 2012) in relevant part as follows:

> You should give special consideration to testimony given by an attending physician. Such special consideration does not require you to give greater weight or credibility to, or to believe or disbelieve, such testimony. It does require that you give any such testimony careful thought in your deliberations.

The trial court concluded that the instruction was unnecessary. Although we may have concluded otherwise, we cannot say on this record that the trial court's

refusal to give the proposed instruction was an abuse of discretion.[3] The trial

court's general instructions informed the jury that it could consider

> the opportunity of the witness to observe or know the things they testify about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.

CP at 82. Based on this instruction, McManus was able to argue that Dr. Won, as

his treating physician, was better qualified to render an opinion on the etiology of

his injury than the Department's witnesses. And the jury was informed that it

could accept this theory. Thus, under the circumstances, the trial court's general

instruction was sufficient. See Boeing, 93 Wn. App. at 186.

Finally, McManus assigns error to the trial court's jury instruction 4, which

included a verbatim recitation of the Board's findings of fact. In particular, the

instruction included the Board's findings of fact 5, which provides:

> Mr. McManus sustained an aggravation of his pre-existing **cervical** degenerative disc changes arising naturally and proximately out of the distinctive conditions of his employment with Clark County.

CABR at 70; CP at 81 (emphasis added). McManus argues that the Board's

reference to disease of the cervical spine, i.e., the neck and upper back, was a

scrivener's error, given that his claimed injury affected only his lumbar spine, i.e.,

the lower back. He further contends that the trial court's refusal to revise the

---

[3] Generally, trial courts would be well advised to give careful consideration to whether the proposed instruction should be given in a particular case. See Hamilton v. Dep't of Labor & Indus., 111 Wn.2d 569, 761 P.2d 618 (1988).

13

Board's finding so that it reflected only injury to his lumbar spine was error. We agree.

Citing RCW 51.52.104 and Homemakers Upjohn v. Russell, 33 Wn. App. 777, 780-81, 658 P.2d 27 (1983), the Department contends that McManus has waived this error because he did not appeal the Board's finding. In Homemakers, we interpreted RCW 51.52.104 to mean that a party aggrieved by a hearing examiner's proposed decision and order and who failed to file a petition for review waived its objections to the record. Id. at 780. But we also noted "that a nonaggrieved party waived absolutely nothing by not filing a petition." Id. at 782. Because McManus prevailed in the proceedings before the Board, we conclude that he was not an aggrieved party and therefore was not precluded from raising the error before the superior court. Moreover, it is undisputed that the finding at issue was in error. The County conceded as much in its petition for review of the Board's decision. See CABR at 48 n.1 ("the administrative law judge incorrectly stated in finding of fact number 5 that Mr. McManus had aggravated his CERVICAL degenerative disc changes"). We are satisfied that the error was properly preserved for our review.

We next consider whether the trial court erred in refusing to revise the Board's finding. We conclude that it did.

RCW 51.52.115 requires that on review of a Board's decision by the superior court, if a case is submitted to a jury "the court shall by instruction advise the jury of the exact findings of the board on each material issue. . . ." The findings and decision of the Board are presumed to be correct, and the burden of

proof is on the party challenging them. RCW 51.52.115; Gorre, 180 Wn. App. at 754. A trial court may substitute its own findings for those of the Board only if it finds from a fair preponderance of credible evidence that the Board's findings and decision are incorrect. Gorre, 180 Wn. App. at 754-55. Stratton v. Department of Labor & Industries, 7 Wn. App. 652, 501 P.2d 1072 (1972) (Stratton II) is instructive on whether the trial court erred in failing to do so in this case.

In Stratton II, we affirmed a trial court's revision of a board finding that contained obvious error that was prejudicial to the challenging party. Id. at 654-56. In that case, we considered the following jury instruction, which reproduced a board finding on Stratton's condition:

> 3. On or about April 29, 1964, the claimant suffered from a psychiatric disorder which was causally related to his industrial injury and was diagnosed as anxiety neurosis with conversion symptoms. Associated with this psychiatric disorder is a demonstrated lack of motivation in the claimant to seek out and maintain gainful employment, coupled with a strong tendency and desire to realize a monetary gain from his injury.

Id. at 654. Stratton contended that the emphasized sentence was not a medical finding based on evidence, but rather an argumentative assertion that he was unmotivated and eager to realize a monetary gain from his injury. We agreed and concluded that the emphasized sentence was "not based upon any medical or other evidence in the record" and merely expressed the "opinion of the board that Stratton won't look for work and has a strong desire to make money from his injury." Id. Because the Board's error was obvious and resulted in prejudice to Stratton, we reversed the judgment and remanded for a new trial. Id. at 656.

15

Similarly in this case, the Board's finding that McManus "sustained an aggravation of his pre-existing cervical degenerative disc" is unsupported by any evidence in the record. Both McManus and the County offered medical testimony related to the degenerative condition in McManus' lumbar spinal region. The only mention of his cervical spinal region came from Dr. Won, who testified briefly that McManus suffered from "arno chiari[4]... a malformation of the base of the skull that tends to press on the nerve." CABR (Won) at 22. Based on this record, we conclude that the Board's finding of fact 5 contained an obvious scrivener's error.

Moreover, the trial court's refusal to revise the finding was not harmless. The jury was instructed to answer only one question:

> Was the Board of Industrial Insurance Appeals correct in deciding that Patrick McManus' low back condition, diagnosed as aggravation of degenerative disc changes and a new central disc protrusion at the L2-3 level, arose naturally and proximately from the distinctive conditions of his employment with Clark County operating a street sweeper?

CP at 60. Thus, the issue before the jury was whether the Board's determination that a causal link existed between McManus' claimed industrial injury and the conditions of his work for the County. Because the Board's finding of fact 5 as represented to the jury referenced the wrong injury, it effectively precluded McManus from establishing this link. Thus, the trial court's refusal to correct the Board's scrivener's error materially affected the outcome of trial.

---

[4] This appears to be a reference to an Arnold-Chiari malformation, which, according to the National Institute of Neurological Disorders and Stroke, is a congenital structural defect in which the cerebellum and parts of the brain stem sit in an indented space at the lower rear of the skull, where it attaches to the spinal column. See Chiari Malformation Fact Sheeet, Nat'l Inst. of Neurological Disorders & Stroke. http://www.ninds.nih.gov/disorders/chiari/detail_chiari.htm (last updated April 29, 2015).

## Attorney Fees

McManus requests an award of reasonable attorney fees on appeal pursuant to RCW 51.52.130.[5] The statute provides for an award of attorney fees to a worker who prevails on appeal from an order granting relief to the worker. Because this matter is remanded for retrial, the prevailing party is not yet determined. Accordingly, an award of attorney fees at this time would be premature and we decline to make such an award. We note that the trial court may award appellate attorney fees, as appropriate, after retrial. Washington Fed. v. Gentry, 179 Wn. App. 470, 496, 319 P.3d 823, 836 review granted sub nom. Washington Fed. v. Gentry, 180 Wn.2d 1021, 328 P.3d 902 (2014) and aff'd sub nom. Washington Fed. v. Harvey, 182 Wn.2d 335, 340 P.3d 846 (2015).

Reversed and remanded for a new trial.

Spearman, C.J.

WE CONCUR:

_____          _____

---

[5] The statute provides:

(1) If, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, or in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court.

DWYER, J. (concurring and dissenting). I concur with the majority's resolution of the issues presented herein—save one. I believe that the trial court erred by refusing to instruct the jury that special consideration should be given to the opinion of a treating physician. This decision both contravened our Supreme Court's precedent and created a disparity between the law applied by the Board of Industrial Insurance Appeals (BIIA) and the law applied by the superior court fact finder. Additionally, such decisions may ultimately lead to additional financial burdens on the funds from which claimants are compensated. Accordingly, from that limited section of the majority opinion, I dissent.

I

Because our Supreme Court has made clear that, in a workers' compensation case, the state of the law is that the opinion of a treating physician is entitled to special consideration by the trier of fact, the trial court erred by refusing to so instruct the jury.

"Instructions are sufficient if they permit a party to argue his or her theory of the case, are not misleading, *and*, when read as a whole, properly inform the jury on the applicable law." Sintra, Inc. v. City of Seattle, 131 Wn.2d 640, 662, 935 P.2d 555 (1997) (emphasis added). I agree with the majority that the instructions given permitted McManus to argue his theory "that Dr. Won, as his treating physician, was better qualified to render an opinion on the etiology of his

injury than the Department's witnesses." Slip Op. at 13. However, the jury was not informed of the "long-standing rule of law in workers' compensation cases that special consideration should be given to the opinion of a claimant's attending physician." Hamilton v. Dep't of Labor & Indus., 111 Wn.2d 569, 571, 761 P.2d 618 (1988).

Hamilton concerned an instruction, similar to the one herein proposed, that provided: "'In cases under the Industrial Insurance Act of the State of Washington, special consideration should be given to the opinion of the plaintiff's attending physician.'" 111 Wn.2d at 570. Reviewing prior case law, our Supreme Court concluded that the instruction "reflect[ed] binding precedent in this state and correctly stated the law." Hamilton, 111 Wn.2d at 572; accord Chalmers v. Dep't of Labor & Indus., 72 Wn.2d 595, 599, 434 P.2d 720 (1967) ("It is settled in this state that, in this type of cases, special consideration should be given to the opinion of the attending physician."); Groff v. Dep't of Labor & Indus., 65 Wn.2d 35, 45, 395 P.2d 633 (1964) ("[W]e have, in several cases, emphasized the fact that special consideration should be given to the opinion of the attending physician.").

Because the instruction stated a clear "rule of law," the Hamilton court held, "it [was] appropriate that the jury be informed of this by the instructions of the court." 111 Wn.2d at 572. "To refuse to do so," the court explained, "would *convert the rule of law into no more than the opinion of the claimant's attorney.*" Hamilton, 111 Wn.2d at 572 (emphasis added). The difference between the law, as explained by the court, and the argument of counsel is key.

2

As juries are instructed, instructions from the court carry a far greater legal and practical significance than do the arguments of counsel. Juries may choose whether to accept or reject an argument of counsel.[1] By contrast, juries may not choose whether to follow the law—they are required to do so.[2]

The majority's conclusion that the proposed instruction was not necessary relies, in part, on Boeing Co. v. Harker-Lott, 93 Wn. App. 181, 968 P.2d 14 (1998). In Boeing, this court held that an instruction comparable to the one at issue in Hamilton was not required because, it opined, "the Hamilton court did not *hold* that an instruction to that effect was mandatory." 93 Wn. App. at 186 (emphasis added). But this is a matter of semantics. Regardless of whether the Hamilton court's prohibition against converting the applicable rule of law "into no more than the opinion of the claimant's attorney," is denominated a *holding* or something else, it binds all lower courts:

> [F]ew opinions address the ground that later opinions deem sufficient to reach a different result. If a court of appeals could disregard a decision of the Supreme Court by identifying, and accepting, one or another contention not expressly addressed by the Justices, the Court's decisions could be circumvented with ease. They would bind only judges too dim-witted to come up with a novel argument.

Nat'l Rifle Ass'n of Am. v. City of Chicago, 567 F.3d 856, 857-58 (7th Cir. 2009), *rev'd on other grounds sub nom.* McDonald v. City of Chicago, 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

---

[1] Thus, the jury herein was instructed: "[I]t is important for you to remember that the lawyers' remarks, statements, and arguments are not evidence. You should disregard any remark, statement, or argument that is not supported by the evidence or the law *as I have explained it to you.*" Jury Instruction 1 (emphasis added).

[2] Again, as the jury herein was instructed: "It . . . is your duty to accept the law as [the court] explain[s] it to you, regardless of what you personally believe the law is or what you personally think it should be. You must apply the law that [the court] give[s] you." Jury Instruction 1.

Moreover, the <u>Boeing</u> court reasoned that the proposed instruction was unnecessary because the claimant's counsel could argue the claimant's theory of the case—that the opinions of the attending physician were entitled to special consideration—under the instructions given. <u>See</u> 93 Wn. App. at 186-87. But this reasoning directly contravened the <u>Hamilton</u> court's assertion that such a view "would convert the rule of law into no more than the opinion of the claimant's attorney." 111 Wn.2d at 572. Because these two contrasting views cannot be reconciled, the view of our Supreme Court must prevail.

"Once [our Supreme Court] has decided an issue of state law, that interpretation is binding until [it] overrule[s] it." <u>Hamilton</u>, 111 Wn.2d at 571. Both the majority and the trial court stray from proper adherence to applicable Supreme Court precedent by determining that the instructions given in this case were sufficient because the claimant's attorney was permitted to argue a rule of law to the jury, in the absence of an instruction on that law by the trial judge.

II

In addition, the trial court's decision not to instruct the jury regarding the rule that special consideration should be given to the opinion of a treating physician created a disparity between the law applied by the BIIA and that applied by the jury.

The Industrial Insurance Act (Title 51 RCW) appeals process is structured such that, between the decision of the BIIA and the superior court decision, the only thing intended to change is the identity of the fact finder. The jury's charge in a workers' compensation case is "to determine whether [the presumption that the findings and decision of the BIIA are correct] is rebuttable by the evidence."

4

Jury Instruction 5. This determination must be made only on the record before the BIIA. Thus, as the jury herein was instructed, "The law requires that this case be tried solely on the evidence and testimony that was offered before the [BIIA]." Jury Instruction 2.

Barring an intervening departure from precedent, the law applied to the record must also remain the same. However, unlike the members of the BIIA, the lay jurors must be instructed by the trial judge on the applicable law, with which the jurors are, in all likelihood, entirely unfamiliar. Thus, if the superior court's instructions do not, as herein requested, include the "long-standing" rule of law that special consideration should be given to the opinion of a treating physician, there is no assurance that the law applied by the two decision-makers (the BIIA and the jury) was the same. This is contrary to the careful design of the legislature.

### III

Finally, if trial court decisions of this type become widespread, claimants will be incentivized to seek additional (and, at this time, unnecessary) medical opinions, which may lead to increased financial strain on the funds from which claimants are compensated.

The rule that special consideration should be given to the opinion of a treating physician works, in part, to correct a potential imbalance between the expert witnesses whose testimony is offered by claimants, often primary care physicians and other general practitioners, and the expert witnesses offered by self-insured employers, often specialists with noted and impressive certifications. Without the rule here at issue, claimants may be incentivized to seek additional

5

medical advice or treatment as a litigation strategy, thus burdening the funds. By obtaining a second opinion—from a physician with a "fancier" curriculum vitae—a claimant may hope to strike a balance between the number and credentials of the expert witnesses offered by each side. This is a potential "real world" impact of decisions such as that we make today. We can avoid such unintended consequences by the simple expedient of requiring that the law—as declared by our Supreme Court—be adhered to.