[No. 10358.    Department Two.    October 29, 1912.]

A. P. MUNSON, *Trustee, Appellant,* v. LOUIE GUNDER, *Sometimes Known as Louis Gonter, et al., Respondents.*[1]

CORPORATIONS—STOCK—SUBSCRIPTION—TRUSTEE OR AGENT. Where one subscribed for stock as a trustee for certain creditors, it is immaterial to his liability on his subscription, so far as third persons dealing with the company are concerned, whether the creditors consented or not, since the subscriber was the owner, either as trustee, or as an agent who subscribed in his own name.

CORPORATIONS—STOCK—SALE—ACTION FOR PRICE—INSTRUCTIONS. In an action for the price of stock sold, in which the only issue is whether defendant agreed to buy it from the original subscriber, it is prejudicial error to instruct that the defendant would not be liable to the plaintiff if he subscribed for or agreed to take the stock of the company and pay it therefor; since it injected an immaterial matter as potentially determinative of the case.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered February 23, 1912, upon the verdict of a jury rendered in favor of the defendants, in an action on contract. Reversed.

*Bates, Peer & Peterson,* for appellant.
*Frank S. Carroll,* for respondents.

ELLIS, J.—This is an action to recover from the defendants, respondents here, the sum of $2,000, alleged to be the agreed purchase price of 100 shares of the capital stock of Puyallup Veneer & Mill Company, a corporation, sold to

[1]Reported in 127 Pac. 193.

them by the plaintiff. The complaint alleges that the plaintiff, on December 2, 1909, sold the stock to the defendants, that the stock was of a par value of $20 a share, and that the defendants agreed to pay $2,000 for the 100 shares. The answer denies these allegations, and sets up as an affirmative defense that the plaintiff gave the stock to the defendant Louis Gonter, in consideration that he go with the plaintiff through the Puyallup valley and aid the plaintiff in selling other stock of the corporation. This affirmative matter is traversed by the reply.

The following facts were established by uncontradicted evidence: some time prior to the month of December, 1909, the plaintiff and one Sandberg were the principal stockholders and officers of a corporation known as Washington Veneer Company; the former was secretary and general manager, the latter president. The mill of that company burned, and the corporation was reorganized under the name of Puyallup Veneer & Mill Company, which took over the assets and assumed the liabilities of the old company. The plaintiff was secretary and manager of the new company and Sandberg was its president. The par value of the stock of the new company was $20 a share. The old company, at the time of this transfer and assumption, owed debts aggregating about $55,000. Upon the reorganization, 2,750 shares of the capital stock of the new company, par value $55,000 were subscribed for and issued to the plaintiff, as trustee for the creditors of the old company whose debts were assumed by the new. The plaintiff testified that he took this stock for the purpose of sale to pay these creditors. It does not appear whether these creditors assented to this arrangement or not; but in our view of the legal effect of the transaction, it is immaterial to the issue here whether they did assent or not. The 2,750 shares of stock were subscribed for and issued. If the creditors whose debts were assumed did assent, then they owned the stock, and their rights as creditors of the old company were merged in their rights and duties as beneficial

owners of these 2,750 shares of stock in the new. If they did not so assent, then the plaintiff, as it seems to us, occupied a position analogous to that of an agent who has subscribed for stock in his own name; he, so far as third parties are concerned, may be held as a subscriber for the stock. 1 Cook, Stock & Stockholders (3d ed.), § 249. Both he and the other organizers of the new company who participated in the transaction would be estopped as to third parties to deny that the stock was subscribed for, in either event. It is a part of this stock which is the subject of the present controversy. The cause was tried to a jury, and from a judgment entered upon a verdict in favor of the defendants, the plaintiff has appealed.

The court, among other instructions, gave the following:

"But, if you find from the evidence, that the defendant, Louis Gonter, subscribed for or agreed to take of the Puyallup Veneer & Mill Company 100 shares of the stock of said company and pay it therefor, then and in that event the plaintiff is not entitled to recover in this action, and your verdict must be for the defendant."

The giving of this instruction is the chief error assigned. The stock which the defendant purchased having been subscribed for and issued, the transaction, so far as the defendants are concerned, was a purchase of the stock from the plaintiff; and as between these parties, the defendants are liable for exactly what they contracted to pay for the stock, no more and no less. This was a question of evidence and is the only disputed question in the case, since the subscription for an issuance of the stock to the plaintiff and the purchase by and delivery of the stock to the defendants was not disputed. Whether, at the instance of creditors of the Puyallup Veneer & Mill Company, either the defendants or the plaintiff might be held as subscribers for the stock is a matter foreign to the issues here. An immaterial matter having been submitted to the jury as potentially determinative of the case

by the instruction complained of, the giving of that instruction was manifestly prejudicial error.

The judgment is reversed, and the cause is remanded for a new trial.

MOUNT, C. J., MAIN, MORRIS, and FULLERTON, JJ., concur.