# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| THE POINTE AT WESTPORT HARBOR HOWMEOWNERS' ASSOCIATION, a Washington nonprofit corporation, | No. 45839-0-II |
| Respondent, | (Consolidated with No. 46079-3-II) |
| v. | PART PUBLISHED OPINION |
| ENGINEERS NORTHWEST, INC., P.S., a Washington professional services corporation; THEODORE D. McDONALD and JANE DOE McDONALD, husband and wife, and their marital community, | |
| Appellants, | |
| And | |
| DODSON-DUUS, LLC, a Washington limited liability company; HARBOR RESORT HOLDINGS, LLC, a Washington limited liability company; GABE DUUS and JANE DOE DUUS, husband and wife, individually and their marital community; HARBOR RESORT PROPERTIES, INC., a closely-held Washington corporation; MARK DODSON and DESIREE DODSON, husband and wife, individually and their marital community; EDWARD DODSON, JR. and ANN GRIMES-DODSON, husband and wife, individually and their marital community; DOE AFFILIATES 1-20; DOE PRINCIPALS 1-10; DOE DECLARANT BOARD | |

No. 45839-0-II
(Cons. w/ No. 46079-3-II)

| MEMBERS 1-10; DOE CONTRACTORS 1-20; DOE DECLARANT AGENTS 1-10; DOE TRANSFEREES 1-50; INTEGRITY STRUCTURES, LLC, a Washington limited liability company; and CORSON SWIFT BUILDERS, LLC, a Washington limited liability company, | |
|---|---|
| Defendants. | |

BJORGEN, C.J. — In these consolidated appeals, structural engineering firm Engineers Northwest Inc. (ENW) challenges several rulings and a judgment entered against it in a lawsuit brought by the homeowners' association (HOA) of The Pointe at Westport Harbor (The Pointe). The issue we address in the published portion of this opinion is ENW's claim that the trial court erred by denying its motion for summary judgment on grounds that ENW owed independent tort duties to the developer of The Pointe and the HOA. We hold that the trial court did not err in denying ENW's summary judgment motion for this reason. We address ENW's remaining challenges in the unpublished portion of this opinion. We affirm the trial court in all respects but one: we reverse and remand for entry of judgment that does not include Corson Swift Builders LLC (Corson Swift), an entity that was not subject to judgment.

FACTS

1.     Design and Construction

Dodson-Duus, LLC, developed The Pointe, an upscale condominium building in Westport. Dodson-Duus contracted with Steven P. Elkins Architects Inc. (Elkins) to carry out the architectural design work for the project. Elkins then contracted with ENW for structural engineering services. ENW worked on the structural calculations and designs, while Elkins did

2

the architectural planning. ENW was also responsible for construction administration, which involved reviewing shop drawings and answering questions from the building contractors.

Dodson-Duus contracted with Integrity Structures LLC to supervise construction. Integrity then subcontracted with Corson Swift for framing work. Construction took place during 2007 and 2008.

According to the evidence presented at trial, both the design and construction suffered from defects. In particular, the lateral force resistance system is insufficient to withstand a large seismic event. These defects include improperly nailed shear walls, weak connections between shear walls and floor joists, improperly sized floor sheathing, a weak second floor diaphragm, and omitted hold downs connecting shear walls to a steel beam. The use of gypsum sheathing also created a risk of corrosion to the building's steel structure. Evidence tied each of these defects to some aspect of ENW's structural calculations and designs. Evidence also tied omission of the hold downs to Corson Swift's construction decisions.

2.     The Lawsuit

In August 2011, the HOA sued Dodson-Duus for construction defects and incomplete construction under the Condominium Act, chapter 64.34 RCW, among other matters. The HOA then added negligence claims against ENW, Integrity, and Corson Swift. The HOA's claims against ENW were for negligent design, and the claims against Integrity and Corson Swift were for negligent construction and misrepresentation. The HOA claimed that the building was "rendered unreasonably dangerous to its occupants," and it sought compensatory damages for the

costs of investigating and repairing the defects. Clerk's Papers (CP) at 55. The HOA did not allege any consequential injuries to persons or property arising from the defects.

Dodson-Duus filed cross-claims against ENW for negligence, breach of contract, and implied indemnity. ENW filed cross-claims against Dodson-Duus and Corson Swift for negligence and implied indemnity. Dodson-Duus eventually settled with the HOA and assigned to the HOA its rights against ENW, Elkins, and Integrity. The HOA then brought a claim against Elkins for breach of its contract with Dodson-Duus. Integrity also settled the HOA's claims against it. CP at 2333.

ENW moved for summary judgment, arguing among other things, that the independent duty doctrine barred negligence claims for harm that was in effect an economic loss. The trial court denied the motion as to each claim, ruling that material issues of fact remained in dispute.

3.      The Trial

At the time of trial, the HOA had outstanding claims against ENW and Corson Swift for negligence, and against Elkins for breach of its contract with Dodson-Duus. The primary issues of fact were whether the building was dangerously unsafe, whether physical damage had resulted from any of the defects, whether the defects resulted from ENW's designs and construction administrations services and Corson Swift's construction, and the scope of repair necessary to fix the defects.

The HOA presented structural engineer James Paustian as its expert to testify to the existence of the defects, the resulting safety risks, and the standard of care for a structural engineer. Paustian testified at trial that in his opinion, informed by his own testing and on-site

observation, the structural engineering work had been deficient and led to the defects that rendered the building dangerously unsafe in a large seismic event. He also testified that such seismic events occur in the area, and prepared a scope of repair that involved fixing each defect in the building. ENW presented another structural engineer, Panos Trochalakis, who opined that ENW was indeed responsible for some of the defects, but that the scope of repair necessary to alleviate any safety risks was less than the total repair Paustian recommended.

Following trial, ENW proposed jury instructions and a special verdict form to the trial court. The trial court refused to give several of the instructions, and ENW objected to their omission. ENW also objected to jury instructions 11, 12, 13, 14, 18, and 19 issued by the trial court. The trial court gave the jury a special verdict form different from the one proposed by ENW, to which ENW objected.

4.      The Verdict and Judgment

The jury was issued instructions and given a special verdict form on which to assign and apportion fault. The negligence questions on the special verdict form allowed the jury to determine and apportion fault only to ENW and Corson Swift, and did not mention Elkins, Dodson-Duus, or Integrity.

The jury found that both ENW and Corson Swift had been negligent and that their negligence caused the defects in the building. It found that the resulting damages amounted to $1,149,332, for which ENW was 97.5 percent at fault and Corson Swift was 2.5 percent at fault. It also found that Elkins had breached its contract with Dodson-Duus, and that the resulting damages were $100,000.

The trial court entered judgment against ENW for the entire amount of negligence damages on the basis of joint and several liability. ENW unsuccessfully opposed entry of the judgment on grounds that it was only severally liable for 97.5 percent of the negligence damages because Corson Swift had been administratively dissolved in 2007 and was not a party against whom judgment could be entered. The trial court also entered judgment against Elkins for the full amount of negligence damages and the $100,000 contract damages.

5.    Post-Judgment Motions

ENW moved for judgment as a matter of law and for a new trial, but the trial court denied the motions. Elkins assigned its rights against ENW to the HOA, and the HOA filed a separate lawsuit against ENW based on the assigned rights and the judgment against Elkins. ENW also moved under CR 60 for correction of the judgment against Elkins, arguing that it was a clerical error to include both the negligence damages and the contract damages when the jury only found Elkins liable for breach of contract. The trial court denied the motion and stated that it believed the jury was assigning liability for both the tort and contract damages amounts.

ENW appeals the trial court's denial of summary judgment, evidentiary rulings related to Paustian's testimony, jury instructions, judgments against both ENW and Elkins, and denial of its motions for judgment as a matter of law, a new trial, and correction of a clerical error.

6

ANALYSIS

I. INDEPENDENT DUTY DOCTRINE

ENW argues that the trial court erred by denying its motion for summary judgment and ruling that ENW owed an independent duty to the developer and the HOA. We disagree.

A.     Standard for Reviewing Denial of Summary Judgment

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, and submitted affidavits show that there are no genuine issues of material fact to be decided and the moving party is entitled to judgment as a matter of law. *Kaplan v. Nw. Mut. Life Ins. Co.*, 115 Wn. App. 791, 799, 65 P.3d 16 (2003). We will not review the denial of summary judgment on grounds that genuine issues of material fact remained unresolved. *Id.* However, where the denial of summary judgment turned solely on a substantive issue of law, we review that issue de novo. *Id.* at 799.

ENW moved for summary judgment on grounds that, among other things, the developer's and HOA's claims were barred by the independent duty doctrine. This presented a legal issue for the trial court. The trial court denied the motion, seemingly without addressing the independent duty doctrine, explaining that in general material issues of fact existed:

> Without an overstatement of these issues between the parties and other entities, this motion brings into question factual issues regarding a determination of judicial equity to be resolved. Although there may be no questions regarding lack of contract between plaintiffs and defendant[s], Engineers Northwest, Inc., the question of equity between the parties involved in this litigation places this court in a position that the Motion for Summary Judgment must be denied at this time.

7

CP at 1695. The trial court later clarified that it specifically denied the independent duty

doctrine claim. Because that claim turned solely on a substantive issue of law, we review the

denial of summary judgment de novo.

B.      Tort Liability for Safety Risks

The independent duty doctrine, previously known as the economic loss rule, bars

recovery in tort for economic losses suffered by parties to a contract unless the breaching party

owed a duty in tort independent of the contract. *Eastwood v. Horse Harbor Found., Inc.*, 170

Wn.2d 380, 393-94, 241 P.3d 1256 (2010). "The test is not simply whether an injury is an

economic loss arising from a breach of contract, but rather whether the injury is traceable also to

a breach of a tort law duty of care arising independently of the contract." *Id*. at 394. Whether

such a tort duty exists is a question of law which we review de novo. *Michaels v. CH2M Hill,

Inc.*, 171 Wn.2d 587, 597, 257 P.3d 532 (2011). Similarly, the scope of such a duty is also a

question of law. *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 455, 243

P.3d 521 (2010).

Our Supreme Court has held that "[g]enerally, 'the foundation of any liability analysis for

. . . design professional[s] rests in contract.'" *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*,

179 Wn.2d 84, 92, 312 P.3d 620 (2013) (alterations in original) (quoting KEVIN R. SIDO,

ARCHITECT AND ENGINEER LIABILITY: CLAIMS AGAINST DESIGN PROFESSIONALS § 1.05, at 7 (3d

ed. 2006)). However, "design professionals also owe duties to their clients and the public to act

with reasonable care, which can sometimes give rise to a tort duty independent of the contract."

*Donatelli*, 179 Wn.2d at 92. Engineers owe such a duty of reasonable care to developers and

8

contractors to whom they provide engineering services. *Jarrard v. Seifert*, 22 Wn. App. 476, 479, 591 P.2d 809 (1979). This duty also extends to holders of legally protected interests in the property. *Affiliated FM*, 170 Wn.2d at 458. To act in accordance with the duty, engineers must exercise "the degree of care, skill, and learning expected of a reasonably prudent engineer in the state of Washington acting in the same or similar circumstances." *Id.* at 455.

ENW agrees that engineers and other design professionals have a legal duty in tort under certain circumstances. However, ENW argues that this tort duty is limited to cases where the engineers' failure to exercise reasonable care results in personal injury or actual physical damage to property. For example, in *Michaels* our Supreme Court held that an engineering firm owed an independent tort duty when a person was killed because of a catastrophic failure at a wastewater treatment plant. 171 Wn.2d at 593, 606-09. In *Affiliated FM*, the Supreme Court held that an engineering firm owed an independent tort duty when property damage resulted from a fire on the Seattle Monorail. 170 Wn.2d at 443-44, 456-57. ENW argues that the trial court should have granted summary judgment in its favor based on the independent duty doctrine because the HOA presented only evidence of potential damage to the condominium buildings, not actual injury or physical property damage.

We disagree that an engineer's independent tort duty is limited to situations in which the engineers' failure to exercise reasonable care results in personal injury or physical damage to property. In *Affiliated FM*, our Supreme Court emphasized that tort law vigorously protects "the safety of persons and property from physical injury." 170 Wn.2d at 452. The court stated:

> [T]he question here is whether an engineer's duty of care extends to *safety risks of physical damage* to the property on which the engineer work[ed]. We hold it does.

9

As we have already observed, the harm in this case exemplifies the safety-insurance
concerns that are at the foundation of tort law.

*Id*. at 456 (emphasis added). The court concluded that an engineer has a duty of care with respect to "safety risks of physical damage" and that an engineer's tort duty "with respect to safety risks" is sufficient to state a claim. *Id.* at 456-57.

We hold that an engineer's duty of care encompasses, inter alia, the prevention of safety risks. *Affiliated FM*, 170 Wn.2d at 456. Even where such safety risks do not cause consequential damage to persons or property, the risk itself constitutes an injury within the class of harm contemplated by a design professional's duty of care. *Id.* at 456-57. Where an engineer's design services ultimately result in the construction of an unsound structure, the engineer has breached his duty of care. *See id.*

We hold that ENW owed an independent duty to the developer and to members of the HOA, as holders of property interests in The Pointe, to take reasonable care to design a building that did not present safety risks to its residents or their property. Therefore, the trial court did not err by denying ENW's summary judgment motion under the independent duty doctrine.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

II. SUMMARY OF REMAINING CLAIMS AND HOLDINGS

ENW further argues that the trial court erred by (1) denying ENW's motion to limit expert testimony and overruling its objections during that testimony when the expert discussed matters outside his expertise, (2) denying ENW's proposed special verdict form, which would

have allowed for apportionment of fault to certain other parties (3) refusing ENW's proposed jury instructions and giving instructions that misstated the applicable law and misled the jury, (4) commenting on testimony presented at trial, (5) including a clerical error in the judgment and denying ENW's motion to correct that error, and (6) entering judgment against a party, Corson Swift, against which judgment could not be entered because it had ceased to exist as a legal entity.

We agree with ENW that the trial court erred by entering judgment against Corson Swift. As to ENW's remaining contentions, however, we hold that the trial court did not commit reversible error. Accordingly, we reverse and remand for entry of judgment that does not include Corson Swift and affirm in all other respects.

### III.  PAUSTIAN'S TESTIMONY

ENW argues that the trial court committed prejudicial error by denying its motion to exclude Paustian's expert testimony regarding the potential for damage to The Pointe in an earthquake, and by overruling its objections to Paustian's testimony regarding the likelihood that large earthquakes would occur in the area. We disagree.

We review a trial court's decision to admit expert testimony for an abuse of discretion. *Johnston-Forbes v. Matsunaga*, 181 Wn.2d 346, 352, 333 P.3d 388 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 144, 331 P.3d 40 (2014).

Expert testimony is generally admissible if the expert is qualified, relies on generally accepted theories in the relevant scientific or technical community, and presents an opinion that

is helpful to the trier of fact. *Johnston-Forbes*, 181 Wn.2d at 355; ER 702. ER 703 provides that

an expert witness may base his opinion on facts or data "perceived by or made known to the

expert at or before the hearing" as long as they are "of a type reasonably relied upon by experts

in the particular field in forming opinions or inferences upon the subject." An expert need not

disclose those underlying facts or data unless questioned about them on cross-examination. ER

705. A trial court, however, should exclude an expert's opinion testimony if the expert "lack[s]

sufficient foundational facts to support his opinion," and the testimony is based on mere

conjecture and speculation. *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126

Wn.2d 50, 104, 882 P.2d 703 (1994).

### 1. Denial of Motion to Exclude

ENW argues that the trial court erred by denying its motion to exclude Paustian's opinion

testimony regarding the likelihood of collapse during an earthquake because he based that

opinion on speculation. ENW grounds this argument on the fact that Paustian did not personally

analyze the structural integrity and actual strength of the building's lateral force resisting system

"as a whole." Br. of Appellant at 36; CP at 1542. Yet Paustian testified that he analyzed the

structural strength of the various components of that lateral force resisting system, using data he

gathered at the site. Clearly, Paustian based his opinion on more than mere speculation. ENW

does not argue that component force resistance data were not "of a type reasonably relied upon"

by structural engineers. Indeed, the testimony of the other experts at trial indicates that such data

are accepted. We hold that the trial court did not err by allowing Paustian to give the jury his

opinion as to the building's structural risks.

2. Overruling of ENW's Objections

ENW also argues that the trial court erred by overruling its objections to Paustian's testimony regarding the likelihood of a large-scale earthquake. It objected on qualification grounds, pointing out that Paustian was neither a seismologist nor a geologist. Although Paustian was qualified only as a structural and civil engineer, the trial court allowed Paustian to opine:

> It's not a matter of if [an earthquake is] going to happen, it's a matter of when it's going to happen. . . . Westport is located close to the subduction zone fault that the geological records state that there are huge . . . magnitudes of eight to nine or more, and that these earthquakes happen, on average, every 500, but as frequently as every 100 years. The last one was -- happened a little over 300 years ago. . . . I base that on information I got from the State of Washington Department of Resources, which publishes information regarding various severities of damage due to different fault lines.

Report of Proceedings (RP) at 265-66.

To the extent this testimony expressed Paustian's opinion that the area is overdue for a large earthquake, it was not properly within the realm of a structural engineer's expertise. Because the testimony regarding the frequency of large earthquakes indicated to the jury that an earthquake was likely to occur soon, Paustian departed from his sphere of qualification and opined on matters of seismology. The trial court abused its discretion by overruling ENW's objection to this portion of Paustian's testimony.

However, we hold that any such error was harmless. Erroneous evidentiary rulings on the admissibility of expert testimony warrant reversal only if the error was prejudicial. *Aubin v. Barton*, 123 Wn. App. 592, 608, 98 P.3d 126 (2004). "An error is not prejudicial unless it affects, or presumptively affects, the outcome of the trial." *Diaz v. State*, 175 Wn.2d 457, 472,

13

285 P.3d 873 (2012). ENW seems to argue that the admission of Paustian's testimony was prejudicial because it gave the jury reason to conclude that potential damage, rather than actual damage, was compensable in tort. However, Paustian's testimony was relevant not to damages, but to ENW's breach of its duty to use reasonable care to avoid creating safety risks. *See Affiliated FM*, 170 Wn.2d at 456. The HOA sought to establish that the building presented such safety risks, then to show that ENW's designs were to blame for them. While Paustian's testimony regarding the likelihood of an earthquake may have made an earthquake appear probable, it did not affect the outcome of the trial because the existence of risk, not the probability of actual damage, was at issue. Paustian properly testified that the building was generally unsafe in a seismic event, and that the building code identifies earthquakes as a risk in the area. Therefore, any error in admitting Paustian's testimony on earthquake probability was not prejudicial and does not warrant reversal.

## IV. Special Verdict Form

ENW argues that because evidence presented at trial supported a finding that Elkins and Integrity were partially at fault, the trial court erred by omitting them from the special verdict form on which the jury apportioned fault. We disagree that the evidence was sufficient to support apportionment of fault to either Elkins or Integrity.

ENW proposed a special verdict form that would have allowed the jury to find negligent any or all of ENW, McDonald, Elkins, Corson Swift, and Integrity, and to allocate fault among them. The HOA proposed a special verdict form that allowed a finding of negligence and allocation of fault only to ENW and Corson Swift. The special verdict form the trial court gave

14

the jury reflected the HOA's proposed form, allowing the jury to find negligence and allocate fault only to ENW and Corson Swift.

In general, a jury, as fact finder, must apportion the total fault in a negligence case among all entities it finds negligent. RCW 4.22.070(1) provides:

> In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages except entities immune from liability to the claimant under Title 51 RCW.

For purposes of the statute, "fault" is defined to include "acts or omissions . . . that are in any measure negligent or reckless toward the person or property of the actor or others." RCW 4.22.015. RCW 4.22.070, however, "is not self-executing. It does not automatically apply to each case where more than one entity could theoretically be at fault." *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 25, 864 P.2d 921 (1993). Only where the applicable law and the evidence presented supports allocating fault to a party may the jury find that party at fault. *Id.*

A trial judge may only allow a jury to decide whether a party is at fault in a negligence action if sufficient evidence supports a finding of fault. *Adcox*, 123 Wn.2d at 25. Because substantial evidence must support the jury's verdict, *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 769, 260 P.3d 967 (2011), such evidence is necessary to meet the sufficient evidence standard. Substantial evidence is evidence sufficient to persuade a fair-minded, rational person. *Alejandre v. Bull*, 159 Wn.2d 674, 681, 153 P.3d 864 (2007).

The HOA contends that ENW presented no evidence regarding an architect's professional standard of care, and therefore that substantial evidence did not support a finding that Elkins breached his duty of care. Our Supreme Court has held that "design professionals

15

have a duty of care to 'exercise the degree of skill, care, and learning possessed by members of their profession in the community.'" *Michaels*, 171 Wn.2d at 609 (quoting 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE 15.51, at 504-05 (3d ed. 2006)). The exact contours of such a professional duty of care must be established by expert testimony, as standards within a professional community generally are beyond the experience of a layperson. *See Morton v. McFall*, 128 Wn. App. 245, 253, 115 P.3d 1023 (2005).

Here, ENW presented no expert testimony regarding an architect's standard of care. The jury therefore was not able to determine whether Elkins' architectural work or approval of certain changes to the plans breached his duty of care. Accordingly, substantial evidence did not support a finding that Elkins was negligent and that it shared fault.

The HOA contends that ENW similarly failed to present evidence regarding Integrity's duty of care as a general contractor. "The analytical framework provided by the independent duty doctrine is only applicable when the terms of the contract are established by the record." *Donatelli*, 179 Wn.2d at 92. ENW did not produce Integrity's contracts with Dodson-Duus, and the trial court indicated that it denied ENW an instruction regarding Integrity's negligence because ENW had failed to show that Integrity had breached tort duties distinct from its contractual duties.

16

Integrity's principal testified that he was "obligated to follow [the design] plans as part of [my] job as general contractor."[1] RP at 630-31. However, no testimony explained whether such obligations arose from standard practices in the construction industry to be expected of any reasonable contractor or whether they were contractual requirements for this project. We agree with the trial court and hold that ENW did not produce substantial evidence of the scope of Integrity's independent tort duties and, therefore, that apportionment of fault to Integrity would have been inappropriate.

Because substantial evidence did not support a finding that either Elkins or Integrity was at fault, the trial court did not err by refusing to give ENW's proposed special verdict form.

## IV. JURY INSTRUCTIONS

ENW argues that the trial court committed several different reversible errors related to the jury instructions. We find no such errors.

A.     Standards Governing Jury Instructions

A trial court has discretion to give or refuse a proposed jury instruction. *Boeing Co. v. Harker-Lott*, 93 Wn. App. 181, 186, 968 P.2d 14 (1998). We review a trial court's refusal of an

---

[1] ENW states in its reply briefing that Paustian also testified regarding a general contractor's duty to notice problems with the design plans regarding the hold downs. In fact, Paustian testified only that

> I would hope on the hold down issue, that the contractor would bring that up. . . . I would think that a contractor should have the knowledge to be able to ask that question.

RP at 307. No evidence established that Integrity had any duty to notice flaws in the design plans.

instruction for an abuse of discretion. *Id.* A trial court abuses its discretion by making a decision that is manifestly unreasonable or basing its exercise of discretion on untenable grounds or reasons. *Id.*

Jury instructions are sufficient if, when read as a whole, they allow the parties to argue their theories of the case, do not mislead the jury, and inform the jury of the applicable law. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 860, 281 P.3d 289 (2012). It is reversible error for a trial court to fail to instruct the jury on an applicable defense theory that is supported by substantial evidence. *Fergen v. Sestero*, 182 Wn.2d 794, 810, 346 P.3d 708 (2015). Giving an improper instruction is grounds for reversal, unless the instruction did not prejudice a party. *Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002). Prejudice is presumed if an instruction clearly misstates the applicable law. *Id.* at 249-50. We review errors of law in jury instructions de novo. *Anfinson*, 174 Wn.2d at 860.

B.      Failure to Give Proposed Instructions

1. Proposed Instructions Summarizing Claims and Defenses

ENW argues that the trial court abused its discretion by refusing to give its proposed instructions describing its claims and affirmative defenses. We disagree.

An instruction summarizing the parties' claims and defenses can sometimes be helpful to the jury. *See* 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 20.01, at 223-23, Note on Use (2010) (WPI). But such an instruction is not necessary in all cases. *See id.* ("The jury often knows the issues from the presentation by the lawyers and the other instructions setting out the duties of the parties."). "When a party's theory of the case is

covered adequately by other instructions, additional instructions are viewed as superfluous."

*Herring v. Dep't of Soc. & Health Servs.*, 81 Wn. App. 1, 27, 914 P.2d 67 (1996). A trial court

does not abuse its discretion by refusing to give such superfluous instructions. *See id*. at 33. Nor

does a trial court abuse its discretion by refusing to give a potentially misleading instruction,

even if legally accurate. *Griffin v. W. RS, Inc.*, 143 Wn.2d 81, 90, 18 P.3d 558 (2001).

ENW proposed a jury instruction summarizing the claims and defenses in the case,

loosely based on WPI 20.01.[2] The instruction detailed ENW's denial of the HOA's claims and

its defense theories relating to each aspect of each claim. ENW also proposed an instruction

describing only its affirmative defenses, including allocation of proportional fault and the burden

of proof for those defenses. Both instructions included language indicating that ENW claimed

Elkins, Integrity, and Corson Swift were the only negligent parties whose actions proximately

caused the HOA's harm,[3] and that the jury could apportion fault to "each defendant," which

would include Elkins and Integrity. CP at 1395, 1397.

As discussed above in section IV, ENW did not present substantial evidence upon which

the jury could apportion any fault to Elkins or Integrity. Therefore, the trial court did not abuse

---

[2] ENW states in its briefing and in the text of the proposed instructions that the instruction was based on WPI 20.05. That pattern instruction, however, consists of qualifying language regarding the jury's consideration of a summary of claims rather than the summary itself. WPI 20.01 is the closer analog to ENW's proposed instructions.

[3] It is unclear whether ENW is arguing that it was denied a superseding cause instruction. However, to the extent it argues the issue, the trial court's instruction on proximate cause was sufficient. CP at 1433 ("The term 'proximate cause' means a cause in which in a *direct sequence produces the injury complained of* and without which such injury would not have happened." (Emphasis added.)

its discretion by refusing to give instructions on ENW's theory that those entities were at fault. Moreover, because ENW's proposed instructions indicated that the jury could apportion fault to "each defendant," the trial court reasonably could have believed that the instructions were confusing as to proper apportionment. The trial court instructed the jury that it must "determine what percentage of the total negligence is attributable to each defendant that proximately caused the damage to the plaintiff." CP at 1433. This allowed ENW to argue its apportionment theory, at least as to Corson Swift. Therefore, the trial court did not prevent the jury from considering ENW's theory of the case to the extent it was supported by substantial evidence.

ENW also seems to argue that the trial court abused its discretion by failing to give an instruction summarizing the parties' claims and defenses. The HOA contends that "the claims and defenses were fully explained, the issues known from the presentation of the lawyers, and the duties of the parties were correctly set forth." Br. of Resp't at 37. In closing argument, the parties explained their claims, defenses, and burdens of proof generally and related them to the instructions given. The trial court's instructions made clear that the jury was to use the special verdict form to determine negligence and apportion fault between the negligent parties. Therefore, even though a summary of claims instruction might have been helpful to the jury, the trial court did not abuse its discretion by declining to give it.

2. Proposed Instructions on the Law of Negligence

ENW argues that the trial court abused its discretion by refusing to give its proposed instructions on the law of negligence. We agree, but hold that the error was not prejudicial.

i. Elements of a Negligence Claim

20

ENW proposed an instruction explaining that a negligence claim required proof of duty, breach, proximate causation, and resulting harm. The trial court did not give this instruction and did not otherwise instruct the jury as to each of the elements of a negligence claim. The HOA contends that the instructions as a whole presented each of the necessary elements. But while the instructions clearly referred to a finding of "negligence," they at no point detailed each necessary element of such a finding. CP at 1433-35.

ENW's proposed instruction stated:

> A claim for professional negligence, requires the plaintiff to establish the existence of a duty, a breach thereof, a resulting damage, and proximate causation between the breach and the resulting damage.

CP at 1393 (citation omitted). The trial court did not give this instruction. Instead, its primary negligence instruction, instruction 17, only required the jury to find:

> First, that one or more of the defendants acted, or failed to act, in one of the ways claimed by the plaintiff and that in so acting, or failing to act, one or more of the defendants *was negligent*; Second, that defendants' negligence *was a proximate cause* of structural defects in the condominium building.

CP at 1435. In addition, Instruction 14 stated that:

> The measure of reasonable care for a structural engineer who undertakes to perform engineering services is the degree of care, skill, and learning expected of a reasonably prudent structural engineer in the state of Washington acting in the same or similar circumstances.

CP at 1434.

Nothing in the instructions, though, explained how the jury was to determine whether a defendant was negligent. No instruction explained that in order to find negligence the jury was required to find that a defendant breached the professional duty described in instruction 14.

Because the jury was not properly informed of the applicable law, the trial court abused its discretion by refusing to give ENW's instruction describing the elements of legal negligence.

However, this abuse of discretion did not prejudice ENW. Although the jury was not instructed that it must find that ENW breached its professional duty to find that it was negligent, ENW did not contest that it had breached its duties. As ENW argued to the jury in closing,

> Engineers Northwest and Mr. McDonald don't contest, and didn't contest during trial . . . that certain aspects of the design, the design work fell below the standard of care, and didn't comply with the Building Code, and that contributed to the as-built condition of the building.
> . . . .
> Mr. McDonald, when he testified, conceded truthfully and honestly that portions of his work on this project were not up to standards, did not meet the Building Code, [and] he is prepared to accept that responsibility.
> . . . .
> What the real issue in this case, is, how much of the Plaintiffs['] scope and cost of repair should be attributable to Mr. McDonald and Engineers Northwest?

RP at 1123-25. Breach of duty was not an issue in dispute, and therefore the trial court's failure to instruct the jury that it must find a breach of duty did not prejudice ENW. Accordingly, we hold that although the trial court erred by refusing to give ENW's proposed instruction on the elements of a negligence claim, that error is not grounds for reversal.

ii. Proximate Causation

The trial court also refused to give ENW's proposed instruction that

> [w]here the defects alleged by the plaintiff are the result of the contractor's noncompliance with the approved structural plans, the plaintiff's claimed damage is not proximately caused by the structural plans of the building.

CP at 1394 (citation omitted). This proposed instruction correctly stated the law. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 534, 799 P.2d

22

250 (1990). However, as the HOA points out, this instruction could have misled the jury as to the issues in the case because it made it appear that ENW's only possible negligent acts or omissions were in the structural planning. Evidence was also presented that ENW acted negligently by failing to advise the builders in its role as a construction administrator. Thus, ENW's proposed instruction was potentially misleading, and the trial court did not abuse its discretion by denying the instruction.

iii. Structural Engineer's Standard of Care

ENW claims that the trial court also refused to give its instruction on an engineer's standard of care. Its proposed language was:

> The measure of reasonable care for an engineer undertaking engineering services is the degree of care, skill, and learning expected of a reasonably prudent engineer in the state of Washington acting in the same or similar circumstances.

CP at 1397. Yet the trial court *did* give the jury a nearly identical instruction as part of a larger instruction, only changing "engineer" to "structural engineer" and "undertaking" to "who undertakes to perform." CP at 1434. ENW does not argue that these minor, immaterial alterations were in any way prejudicial. We hold that the trial court did not abuse its discretion by giving the instruction as it did.

C.    Proximate Cause Instruction

ENW argues that the trial court erred by giving an improper instruction on proximate cause. We disagree.

The trial court's jury instruction 11 on proximate cause stated that "[t]he term 'proximate cause' means a cause in which in a direct sequence produces the *injury complained of* and

23

without which such injury would not have happened." CP at 1433 (emphasis added). According to ENW, this was misleading because the harm to the HOA was a safety risk, rather than an "injury." Br. of Appellant at 40; Reply Br. of Appellant at 22. However, as discussed in section I above, construction of an unsafe building that creates a safety risk constitutes a legal injury. *Affiliated FM*, 170 Wn.2d at 456. Because the evidence clearly indicated that no personal injuries had yet resulted, it is unclear how the use of the term could have misled the jury. The trial court did not err by giving instruction 11.

D.      Measure of Damages Instruction

ENW argues that the trial court also erred by giving an improper instruction on the measure of damages. We disagree.

In instruction 18, the trial court told the jury:

If you find for the Association, your verdict shall include the following items:

> 1. The costs necessary to repair any structural defects that have created a safety risk of physical harm to persons or property;
> 2. The costs already paid by the [HOA] to identify the structural defects and what repairs are necessary to avoid the risk of physical harm; and
> 3. Such other expenses as are necessary and reasonably expected to be incurred as a result of Defendants' negligence.

CP at 1435-36. This instruction generally asked the jury to measure the HOA's damages as the full cost of repair to any structural deficiencies that created a safety risk resulting from the defendants' negligence. According to ENW, this misstates the law because such repair costs are not legally recognized measures of the HOA's recoverable damages. ENW asserts that only actual damages—by which it appears to mean damages arising from consequential injury to

24

persons or property—are recoverable, and the cost of repairing a safety risk is not an actual damage.

When negligence results in harm to real property, compensatory damages are awarded "'to return the injured party as nearly as possible to the position he would have been in had the wrongful act not occurred.'" *Thompson v. King Feed & Nutrition Serv., Inc.*, 153 Wn.2d 447, 459, 105 P.3d 378 (2005) (quoting 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE 5.2, at 126 (2d ed. 2000)). Where the harm consists of a structural safety risk, returning the party to its position before the wrongful act occurred reasonably requires removing that safety risk. Such costs include the costs associated with assessing and redesigning the structure as necessary to facilitate repairs, as these are, in effect, repair costs. This is exactly what instruction 18 asked the jury to find. Therefore, the trial court did not err by giving instruction 18.

E.      Addition of Immaterial Issue

ENW argues that the trial court committed prejudicial error by adding an immaterial issue to the case when it instructed the jury on the City of Westport's role in the events at issue. We disagree.

In instructions 15 and 16, the trial court instructed the jury that

> [t]he City of Westport does not owe any duty to ensure compliance with building codes. No duty is owed by local government to a claimant alleging negligent issuance of a building permit or negligent inspection to determine compliance with building codes.
> . . . .
> The issuance or granting of a building permit or approval of plans by the City of Westport shall not be construed to be a permit for or approval of any violation of any of the provisions of the building code. Permits presuming to give

> authority to violate or cancel the provisions of the building code or other law are invalid.

CP at 1434. According to ENW, these instructions asked the jury to consider the extraneous issue of the City's liability when the City was not a party and its liability was not at issue. The HOA contends that the instructions did exactly the opposite: ensuring that the jury did not unduly concern itself with the City's actions.

A trial court commits prejudicial error by instructing the jury on an immaterial issue in a manner that allows the jury to determine the outcome of the case on inappropriate grounds.[4] *Munson v. Gunder*, 70 Wash. 629, 631-32, 127 P. 193 (1912). Here, it is clear that the City's actions were immaterial to the issues before the jury. Neither instruction 15 nor instruction 16 provided any grounds on which the jury could determine the outcome of the case; nor did they ask the jury to deliberate on an immaterial issue. Instead, they warned the jury *not* to consider the City's actions when assessing liability. Because those actions were discussed at trial in other contexts, there was reason to believe the jury might improperly consider them when assessing ENW's negligence. The instructions were not prejudicial to ENW, and the trial court did not err by including them.

F.      Improper Emphasis

---

[4] In its reply briefing, ENW argues that cases establish that *any* instruction on an immaterial matter is prejudicial error. The cases it cites, however, are inapposite. *See Child v. Hill*, 149 Wash. 468, 471, 271 P. 266 (1928) (involving a potentially determinative immaterial issue); and *Stratton v. Dep't of Labor & Indus.*, 1 Wn. App. 77, 80, 459 P.2d 651 (1969) (holding that under the specific statutory process of a superior court appeal of a decision of the Board of Industrial Insurance Appeals, immaterial findings made by the Board may not be presented to a jury).

Finally, ENW argues that the trial court improperly emphasized the HOA's theory of the case by giving repetitive instructions. We disagree.

In essence, ENW argues that the cumulative effect of the various instructional errors unduly emphasized the HOA's case and deemphasized ENW's theory of the case. A trial court deprives a party of a fair trial by issuing instructions to the jury that, when taken as a whole, "'so repetitiously cover a point of law or the application of a rule as to grossly overweigh their total effect on one side and thereby generate an extreme emphasis in favor of one party to the explicit detriment of the other party.'" *Brown v. Dahl*, 41 Wn. App. 656, 579, 705 P.2d 781 (1985) (quoting *Samuelson v. Freemen*, 75 Wn.2d 894, 897, 454 P.2d 406 (1969)). Reversal is proper only where "instructions on a particular point [are] so repetitious as to generate an 'extreme emphasis' that 'grossly' favors one party over the other." *Adcox*, 123 Wn.2d at 38 (quoting *Samuelson*, 75 Wn.2d at 897).

Here, the trial court's instructions were not repetitious. Further, although the trial court failed to properly instruct the jury on the elements of a negligence claim, it presented the other applicable rules of law accurately and fairly. The instructions certainly exhibited no extreme emphasis of the HOA's theory of the case or gross favoritism toward any party. Reversal is not warranted on this ground.

## V. TRIAL COURT'S COMMENT ON THE EVIDENCE

ENW argues that the trial court commented on the evidence by interjecting several times during Paustian's testimony. We disagree.

Under our state's constitution, judges may not comment on matters of fact. WASH.
CONST. art. IV, § 16. Such commentary includes any conveyance of a judge's opinion regarding
testimony presented at trial. *Hizey v. Carpenter*, 119 Wn.2d 251, 271, 830 P.2d 646 (1992). "A
constitutionally prohibited comment on the evidence allows the jury to infer from what the judge
said or did not say that he personally believed or disbelieved the testimony in question." *Id*.
Even if a judge makes such comments, though, they ordinarily are not prejudicial and therefore
are not grounds for reversal, if the jury was instructed not to consider them. *Id*.

ENW identifies several "interjections" by the court, but most of them were in fact just
adverse rulings on ENW's objections and motions to strike regarding Paustian's testimony. An
adverse ruling on an objection, in and of itself, does not allow a jury to infer that a judge believes
or disbelieves a witness. ENW points to no statement by the judge indicating his personal
opinion on the facts of the case or Paustian's testimony.

ENW does point out several actual interjections by the court instructing ENW's attorney
not to interrupt Paustian during his testimony.[5] ENW states that the jury could infer from these
admonishments "that . . . Paustian's testimony was credible and ENW was interfering with
credible testimony." Br. of Appellant at 48. But in fact the only logical inference one could
draw from the admonishments is that the witness was permitted to answer as he saw fit, without
interruption by the questioning attorney. *See, e.g.*, RP at 358 ("If you think his answer is not
responsive, you may move to strike, but don't interrupt."). That inference is unrelated to the

---

[5] One of these admonishments, which ENW specifically highlights in its briefing, took place
outside the presence of the jury. It is unclear how the jury could possibly consider such an
admonishment when it did not hear it.

facts of the case and therefore cannot constitute commentary on the evidence. Therefore, the trial court did not comment on the evidence.

## VI.    CLERICAL ERROR

ENW contends that the trial court made a clerical error in the judgment and further erred in denying ENW's motion to correct that error. We disagree with both contentions.

A clerical error is an error that does not "embod[y] the trial court's intention, as expressed in the record at trial." *Presidential Estates Apartment Assoc. v. Barrett*, 129 Wn.2d 320, 326, 917 P.2d 100 (1996). A trial court may correct a clerical error of its own initiative or on the motion of a party. CR 60(a). Under RAP 7.2(e), we may similarly correct such a mistake. In considering whether the trial court properly denied a CR 60(a) motion, we may consider the trial court's statements of intent. *Presidential Estates*, 129 Wn.2d at 333.

At a hearing and in an e-mail, the trial court made it clear that the judgment accurately reflected its intention to enter judgment against Elkins in the total amount of $1,249,322, comprising $1,149,322 for the negligence damages and $100,000 for the contract damages. The trial court explained that it based the judgment on its interpretation of the verdict:

> [I]t was clear to me that the jury was awarding judgment against Elkins for any damages caused by Elkins['] negligence, or breach of contract rather, that was above and beyond the negligence claim against Engineers Northwest, in addition to.

CP at 1858. This interpretation comports with the special verdict form, which asked the jury to find any contract damages "over and above the damages" assigned for negligence. CP at 1446.

29

The trial court entered judgment for the total amount of both the negligence and contract damages, in line with its stated intentions. Thus, the trial court made no clerical error in the judgment amount.

## VII. AMOUNT OF JUDGMENT

ENW argues that the trial court erred in entering judgment against it for the full amount of the award because it had only several liability for the 97.5 percent fault apportioned to it by the jury. It bases this argument on a claim that Corson Swift, the entity apportioned the remaining 2.5 percent fault, was not a legal entity against which a judgment could be entered.

ENW argues that Corson Swift was not an entity against which judgment could be entered because it had been administratively dissolved and cancelled. The HOA argues that ENW's position was in effect a statute of limitations defense, which ENW waived by failing to timely raise and by pursuing its cross claim against Corson Swift. The HOA also argues that judgment could be entered against Corson Swift regardless, because later amendments to the Limited Liability Company Act (LLC), chapter 25.15 RCW, permitted suits against dissolved LLCs to apply retroactively. We hold that ENW has not waived the issue, and that the amended provisions of chapter 25.15 RCW do not apply retroactively.

A.    The Former Statutory Scheme

Under the version of the LLC Act effective from 2006 to 2010, the secretary of state could administratively dissolve an LLC, and the LLC's certificate of formation would be automatically cancelled two years from the date of dissolution if it did not seek and achieve

30

reinstatement.[6]  *Chadwick Farms Owners Ass'n v. FHC LLC*, 166 Wn.2d 178, 188, 207 P.3d

1251 (2009).  Pursuant to those former statutes, Corson Swift was administratively dissolved on

February 1, 2007 and was not reinstated, so its certificate was automatically cancelled on

February 1, 2009.

At the time, former RCW 25.15.303 (2006), *repealed by Laws of* 2015, chapter 188,

section 108 (2016), provided:

> The dissolution of a limited liability company does not take away or impair any remedy available against that limited liability company, its managers, or its members for any right or claim existing, or any liability incurred at any time, whether prior to or after dissolution, unless an action or other proceeding thereon is not commenced within three years after the effective date of dissolution.

Former RCW 25.15.303.  Our Supreme Court interpreted this provision as a three-year statute of

limitations on claims brought against a dissolved LLC during the winding-up period.  *Chadwick*

*Farms Owners*, 166 Wn.2d at 182, 201-02.  It also held that "an action against a limited liability

company, whether arising before or after dissolution, must be brought within three years of

dissolution, but an action against a limited liability company will abate upon cancellation."  *Id*. at

195.  Therefore, claims against a dissolved LLC had to be brought before the LLC was

cancelled, and in the case of administratively dissolved LLCs that were not reinstated, within two

years from the date of dissolution.  *Id*. at 188-89, 197.

B.     Waiver

---

[6] Former RCW 25.15.080, *repealed by* Laws of 2010, ch. 196, § 14; former RCW 25.15.280, *repealed by* Laws of 2015, ch. 188, § 108 (2016); former RCW 25.15.290(4), *repealed by* Laws of 2015, ch. 188, § 108 (2016).

ENW argues that under the former statutes and *Chadwick Farms*, judgment could not be entered against Corson Swift because any action against it abated. The HOA argues that ENW waived this argument by failing to timely raise it and by taking contrary action. We hold that ENW could not waive abatement of the claims against Corson Swift under the version of the LLC Act effective in 2006.

As our Supreme Court held in *Chadwick Farms*, actions against LLCs abated upon cancellation under the former statutes. 166 Wn.2d at 195. ENW did not raise the issue of abatement until it challenged the judgment and it pursued cross claims against Corson Swift. *Chadwick Farms*, though, gives no indication that the abatement of actions due to cancellation was subject to waiver. Instead, the court in *Chadwick Farms* used mandatory language indicating that the abatement occurred by operation of law: "[A]n action against a limited liability company *will abate* upon cancellation." 166 Wn.2d at 195 (emphasis added).

Because an LLC's existence as a separate legal entity ended upon cancelation under former RCW 25.15.303, *Chadwick Farms*, 166 Wn.2d at 194, actions against it were not authorized by law, *id*. at 198. Another party's failure to raise abatement by operation of former RCW 25.15.303 or filing of abated cross claims against a canceled LLC would not resurrect the LLC's existence as a legal entity, nor would it resurrect abated claims against that LLC by operation of waiver rules.

The HOA points to no contrary authority, citing only *Otis Housing Association, Inc. v. Ha*, 165 Wn.2d 582, 201 P.3d 309 (2009), a case involving a waiver of a contractual right to arbitration, apparently for the general proposition that claims may be waived by contrary

32

actions.[7] However, ENW could not waive abatement of the claims against Corson Swift, and therefore could challenge the judgment against it on grounds that Corson Swift was not an entity against which judgment could be entered.[8]

C.      Retroactive Application of Former RCW 25.15.303

The HOA contends that the trial court should have given retroactive application to the legislature's 2010 amendments to the LLC Act in response to the *Chadwick Farms'* decision. We disagree.

In June 2010, the legislature enacted Senate House Bill 2657, which amended the LLC Act to remove the statutory provisions requiring abatement of actions upon administrative cancellation. S.H.B. 2657, 61st Leg., Reg. Sess. (Wash. 2010). It removed the statutory provisions ending an LLC's existence at cancellation, *id*. at 3, and automatically cancelling the LLC two years after administrative dissolution, *id*. at 7. The amendments also made the limitation period applicable only to LLCs dissolved by filing a certificate of dissolution (rather than by automatic cancellation). *Id*. at 13.

---

[7] The HOA also argues that ENW was required to plead abatement as an affirmative defense under CR 8(c). However, the abatement of claims against Corson Swift was not an affirmative defense to the HOA's claims against ENW. In its responsive pleading, ENW raised Corson Swift's comparative fault as an affirmative defense. Whether Corson Swift was subject to legal action for that fault and whether judgment could be entered against it were separate matters and were not affirmative defenses to the claims against ENW.

[8] The HOA does not argue that ENW was estopped from raising the abatement argument. Even though the HOA's argument about waiver by cross claim seems to imply judicial estoppel, the HOA's language and citations make it clear that it believes ENW waived abatement, not that it was judicially estopped from raising abatement after cross-claiming against Corson Swift.

As a matter of statutory interpretation, we review the effect of statutory amendments de novo. *See Chadwick Farms*, 166 Wn.2d at 186. We presume that an amendment applies prospectively, unless the legislature intended otherwise or the amendment is remedial in nature. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). In assessing legislative intent, we may look to both the plain language of the statute and its legislative history. *Id.* at 271-72. A statute is remedial only if it "'relates to practice, procedure, or remedies and does not affect a substantive or vested right.'" *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 586, 146 P.3d 423 (2006) (quoting *Miebach v. Colasurdo*, 102 Wn.2d 170, 181, 685 P.2d 1074 (1984)).

The HOA argues that statutes specifying the survival period of legal entities are generally procedural and therefore remedial in nature. However, "'[a] statute which provides a claimant with the right to proceed against persons previously outside the scope of the statute deals with a substantive right, and therefore applies prospectively only.'" *Houk v. Best Dev. & Constr. Co.*, 179 Wn. App. 908, 914, 322 P.3d 29 (2014) (quoting *Dep't of Ret. Sys. v. Kralman*, 73 Wn. App. 25, 33, 867 P.2d 643 (1994)). Corson Swift ceased to exist and was not subject to suit under the earlier statutes as interpreted in *Chadwick Farms*, but would have remained subject to suit under the amended statutes. The legislature recognized that *Chadwick Farms* rendered administratively cancelled LLCs immune from suit by creditors and amended the statutes specifically to allow such suits. *See* S.B. REP. on S.H.B. 2657, 61st Leg., Reg. Sess. (Wash. 2010). Therefore, the amendments provided claimants with a new substantive right to sue and were not remedial in nature.

Because the amendments were not remedial in nature, and the legislature did not clearly intend that they apply retroactively, the HOA has not overcome the presumption of prospective application. The amendments do not apply retroactively. Accordingly, we hold that Corson Swift ceased to exist as a legal entity at the time of cancelation, was not subject to suit under the former statutes, and was not a defendant against which judgment could be entered in this case. ENW could not be held jointly and severally liable for the percentage of fault attributed to Corson Swift, as Corson Swift itself was not subject to judgment for that fault. *See* RCW 4.22.070(1)(b). We reverse and remand for entry of a new judgment imposing several liability on ENW for the 97.5 percent fault apportioned to it by the jury.

CONCLUSION

We hold that the trial court (1) did not err in denying summary judgment to ENW on the independent duty doctrine, (2) committed harmless, non-prejudicial error by allowing Paustian to testify as to matters outside his expertise, (3) did not err by denying ENW's proposed special verdict form, (4) did not commit reversible instructional error, (5) did not comment on the testimony, and (6) did not make a clerical error in the judgment. However, we hold also that the trial court (7) erred by entering judgment against Corson Swift. We reverse and remand for

35

No. 45839-0-II
(Cons. w/ No. 46079-3-II)

entry of judgment against ENW for the 97.5 percent fault apportioned to it and for removal of

Corson Swift from the judgment.  In all other respects, we affirm.

Bjorgen, C.J.

We concur:

Johanson, J.

Maxa, J.

36